ANNA C. DUNBAR, Defendant in Error, *vs.* CHARLEY L. DUNBAR *et al.* Plaintiffs in Error.

*Opinion filed April 18, 1912—Rehearing denied June 5, 1912.*

1. DEEDS—*voluntary conveyances made on the eve of grantor's marriage are prima facie fraudulent as to wife.* Voluntary conveyances by either party to a marriage contract, of his or her real estate, made without the knowledge of the other and on the eve of marriage, are *prima facie* a fraud upon the other's marital rights.

2. SAME—*when grantees are not purchasers for value.* The grantees in deeds made by their father on the eve of his second marriage and without the knowledge of his intended wife are not purchasers for value as against the wife, even though they paid a certain sum to the grantor annually and assumed an obligation to pay certain sums to their sisters, where the total amount of such obligations and payments does not equal the fair rental value of the land and where there was no other money consideration.

3. DOWER—*what necessary to sustain a conveyance as against a claim for dower.* A conveyance made on the eve of marriage, without the knowledge of the intended wife, cannot be sustained as having been made to carry out a previous contract unless the grantee is able to show such a state of facts as would have entitled him to a decree of specific performance had the conveyance not been made, and it is not sufficient that the conveyance was made to discharge a moral obligation growing out of an unenforcible contract.

4. HOMESTEAD—*personal residence of widow on the homestead premises is not required.* Personal residence of the widow upon the homestead premises is not essential in order to prevent abandonment, and she may lease the premises and use the rent or may leave the property unoccupied indefinitely, if she intends to return to it and acquires no homestead elsewhere; and the fact that the heirs obtain possession of the property in her absence, without her consent, does not deprive her of her homestead rights.

WRIT OF ERROR to the Circuit Court of Henry county; the Hon. EMERY C. GRAVES, Judge, presiding.

GRANT NEWELL, and ALBERT E. BERGLAND, for plaintiffs in error.

CLARK ABY, and ANDERSON & ANDREWS, for defendant in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Anna C. Dunbar, whose maiden name was Anna Cardiff, filed a bill in the circuit court of Henry county against Charley L., Harry, Orson and Albertus Dunbar for the purpose of having her dower and homestead rights assigned to her in certain real estate which was owned prior to her marriage to him, by her deceased husband, Washington Dunbar. A trial in the circuit court resulted in a decree finding that complainant, Anna C. Dunbar, was entitled to her dower in the said lands but not entitled to a homestead, the court holding that as to the homestead complainant had lost her right to that estate by abandonment. The defendants below, who are the sons of Washington Dunbar by his first marriage, have sued out a writ of error to bring up for review the decree of the circuit court finding that complainant below was entitled to dower, and she has assigned appropriate cross-errors to obtain a review of the decree below in respect to her homestead rights.

The material facts as set out in the bill of defendant in error and proven on the hearing are as follows: Washington Dunbar in the year 1900 was a widower seventy-eight years of age, and resided on his farm, consisting of 320 acres of valuable farm lands in Henry county. He had been married and had six children by his first wife, all of whom were grown up and had homes of their own. He resided on his farm with no one in the house with him except an employed housekeeper. His life was lonely and he longed for companionship. Through friends he was introduced to defendant in error, an unmarried woman who was making her own living by working at dressmaking. After talking with defendant in error, he on the 4th day of February, 1900, proposed marriage to her and an engagement resulted. At the time the engagement took place he was the owner in fee simple of 320 acres of farm lands located in Henry county, estimated to be worth about $50,000, and

nineteen acres of timber land in Knox county, which was not of great value, and a small amount of personal property, consisting of live stock and household furniture. He told defendant in error, at the time she accepted his proposition to marry him, that he owned this property and that it was clear of all encumbrances and that she should have her full share in his estate. The matter of making a contract settling defendant in error's property rights was discussed. He offered to contract with defendant in error, giving her a one-third interest in all of his estate. Defendant in error said that she thought that would be unfair to his children, and that she would be satisfied if he would arrange for her to take a child's part in his estate. He had two daughters, who are parties to this suit,—six children in all. A child's part, as suggested by defendant in error, would have been one-seventh instead of one-third, as he offered to give her. The subject of settling defendant in error's property rights was discussed by her and him at different times, but a contract was never, in fact, made. Some time after the engagement became known he told defendant in error that he could not make the contract,—that his children would not allow him to do so,—but that he would provide for her in another way that would be better than a contract, and outlined a plan by which he thought he would be able to protect his intended wife in her rights. On the 19th of April, 1900, he, without the knowledge or consent of the defendant in error, conveyed to each of his four sons 80 acres of the 320 acres of land in Henry county. These deeds were executed and delivered to the several grantees and placed upon record, and the fact of their execution was concealed from defendant in error until several weeks after the marriage was consummated, which occurred June 7. Information in regard to the conveyances was obtained by defendant in error in September after her marriage in June, and came to her by mere chance, through persons other than her husband or plaintiffs in error. Soon after defendant in

error ascertained that her husband had conveyed all of his real estate, except the nineteen acres of timber land, to his sons, she consulted a lawyer in regard to her rights and what steps, if any, she should take to secure them. She retained a lawyer to represent her. Plaintiffs in error were notified by Mr. Anderson, of Galva, who was the attorney employed by defendant in error, that defendant in error would insist upon her marital rights in her husband's real estate. After the marriage, in June, the defendant in error went with her husband to his home and resided there with him as his wife until her husband's death, which occurred in October, 1907. After the death of her husband a petition was filed in the county court to sell the nineteen acres of timber land to pay debts, and the same was sold and defendant in error received $90 as her dower interest. This appears to be all that defendant in error has received, by reason of her right to dower, out of the real estate of her deceased husband. On behalf of plaintiffs in error it is contended that at the time the deeds were made they had no knowledge of the marriage contract existing between their father and defendant in error. It is also contended that they are purchasers, for a valuable consideration, of the respective parcels of real estate conveyed to them. It is also shown that after the execution of the deeds each of plaintiffs in error went into the possession of the 80 acres conveyed to him, and has occupied the same, paid the taxes thereon and made valuable and lasting improvements on the land. It is also shown that each of the plaintiffs in error agreed to pay Washington Dunbar $200 per annum as long as he lived, and that said sums have all been paid by plaintiffs in error. It is also shown that at the time Washington Dunbar conveyed his lands to his sons he required each of the sons to execute a mortgage upon the respective parcels of land conveyed, to his daughters, Effie Snyder and Adelia Winnie, for $1125, making a total encumbrance in favor of the two daughters of $4500 upon the 320 acres of land.

Plaintiffs in error have severally enjoyed the rents and profits arising from the use of the lands conveyed to them, respectively, since the conveyances were made, free of all rent or other charges except the $200 per annum paid by each of the plaintiffs in error to their father during his lifetime. The rental value of the lands conveyed is shown to be about $6 per acre per annum.

The foregoing statement embraces the substance of all the facts that are necessary to determine the questions that are raised by plaintiffs in error. The facts bearing upon the cross-errors assigned in regard to the abandonment of the homestead by defendant in error will be referred to hereinafter, in connection with the consideration of the question in regard to the homestead.

The law in this State is well settled that a voluntary conveyance by either party to a marriage contract of his or her real property, made without the knowledge of the other and on the eve of marriage, is a fraud upon the marital rights of such other, and may be set aside as fraudulent and void as against the party whose rights are injuriously affected by such conveyance. (*Daniher* v. *Daniher,* 201 Ill. 489, and cases there cited.) Under the law of this State a conveyance made after a contract of marriage has been entered into, even though it is voluntary, is not conclusively presumed to be fraudulent, although in other jurisdictions the rule seems to be otherwise. (*Ward* v. *Ward,* 63 Ohio St. 125; *Arnegaard* v. *Arnegaard,* 7 N. Dak. 475.) Following the rule laid down in *Champlin* v. *Champlin,* 16 R. I. 314, *Hamilton* v. *Smith,* 57 Iowa, 15, and *Fennessey* v. *Fennessey,* 84 Ky. 519, this court, in *Daniher* v. *Daniher, supra,* on page 494, laid down the rule as follows: "But we think the better rule is, that where any such voluntary conveyance is made without the knowledge of the other of such contracting parties it presents a *prima facie* case of fraud, subject to be explained by the parties interested, and the burden is on the grantee to establish the validity of the

deed." In the case at bar there is no dispute about the existence of a marriage contract at the time the conveyances to plaintiffs in error were made. It is not denied that Washington Dunbar told defendant in error that he owned 320 acres of as good land as there is around, and that the same was free from encumbrances, and that he intended to keep the title in his name as long as he lived. There is no controversy in the evidence as to the fact that defendant in error believed, when she married, her husband was the owner of the 320 acres of land, and that all knowledge of the conveyances in question was carefully kept from her until she received information through other persons. It is also admitted by plaintiffs in error that no money consideration passed from them to their father for the conveyances at the time the deeds were made. It is true that they agreed to pay their father $200, each, during his natural life and assumed an obligation of $1125 to their sisters, but when the rental value of the land is taken into account it can readily be seen that plaintiffs in error did not assume any obligation that the rents on the land have not more than paid during the seven years that they have, respectively, enjoyed the rents and profits of their several parcels of land. Assuming the rent of the lands to be $6 per acre, the rent of the 320 acres would bring a total of $1920 per year, or a grand total of $13,440 for the seven years which plaintiffs in error have enjoyed the use of the premises. Plaintiffs in error have paid their father $800 a year for seven years, or a total of $5600, and agreed to pay their sisters $4500, making a total of $10,100, which, deducted from the $13,440, leaves a balance of $3340 in favor of plaintiffs in error, and in addition thereto they claim to have the fee simple title to valuable farm lands, conservatively estimated to be worth $50,000; and in the face of these facts plaintiffs in error claim to be *bona fide* purchasers of the land against defendant in error, who has received $90 as her dower interest in her husband's estate. When these facts

are considered in connection with the time when the conveyances were made and the studious concealment of the facts from defendant in error, we have no hesitation in holding that the court below did not err in finding that these conveyances are fraudulent, in law, as against the marital rights of defendant in error.

It is contended by plaintiff in error Harry Dunbar, to whom the "home 80," as it is called, was conveyed, that as to him the decree is erroneous because it is claimed that there was an antecedent parol contract between Washington Dunbar and his son Harry that the father would convey to him the home 80 in consideration that Harry would remain with him and cultivate the home 80 and take care of his father during the balance of his life. The general rule is, that a claim for dower is subject to every lien or encumbrance, at law or in equity, which exists before the right to dower attaches, and it has frequently been decided that a conveyance made for the purpose of carrying out a previous valid contract is good against a claim of dower. (*Daniher* v. *Daniher, supra,* and cases there cited.) Conceding this to be the established rule, still, before it can be invoked to shield such a conveyance from the imputation of fraud, the grantee must show such a state of facts as would have entitled him to a decree for specific performance had the conveyance not been made. In other words, to sustain the conveyance it must be shown to have been made by the grantor in the discharge of some legal or equitable obligation which the law would recognize and enforce at the instance of the grantee, as contradistinguished from a mere moral obligation growing out of some unenforcible promise. The evidence is that Washington Dunbar owned four 80-acre tracts of land, and he had four sons; that frequently, in discussing the distribution that he contemplated making among his sons, he referred to the home 80 as intended for Harry. In fact, it is shown that during his first wife's lifetime this was the general family understand-

ing, and at one time it even went to the extent of taking the form of a last will in which the home place was devised to Harry, but for some reason not material here the will never became operative. We do not regard the position of Harry Dunbar as materially different from that of his brothers. Under the evidence in this case he clearly could not enforce the specific performance of the alleged contract, first, because the contract was not in writing and there was no such part performance as to take the contract out of the operation of the Statute of Frauds; and second, possession of the premises was retained by the father until his death, although Harry cultivated the premises under his father's direction and authority and paid rent therefor prior to the time the deed in question was made.

The position of plaintiffs in error is not strengthened by the fact that a considerable amount of money was expended by each of them for substantial and permanent improvements upon their several tracts. All of these improvements were made after defendant in error had served notice upon plaintiffs in error that she would insist upon her marital rights in her husband's land. The expenditure of money by the plaintiffs in error under these circumstances cannot create a new equity or strengthen any already existing in plaintiffs in error.

The court below held that defendant in error was not entitled to a homestead in the land upon which the residence was located, at the time of her husband's death, and upon this ruling the defendant in error has assigned cross-errors. Assuming that the deed to Harry Dunbar of the home 80 was fraudulent as against the rights of defendant in error, she would be entitled to a homestead unless she has lost that right by abandonment. Plaintiffs in error claim that the homestead was abandoned by the widow after the death of Washington Dunbar, and that she thereby lost all right to have a homestead assigned to her. The court below held that the homestead had been abandoned. The

evidence is, that the defendant in error, soon after her husband's death, left the homestead and moved most of her household goods to Galva, where her step-mother lived. Before going away defendant in error consulted an attorney as to whether it was necessary for her to remain in the residence in order to hold her homestead right, and she was advised that as long as she retained the possession it was not necessary that she should actually live in the house. Accordingly, defendant in error stored a part of her household goods in one room and locked the house and retained the key, and refused to surrender the key when it was demanded of her. She always claimed that she retained possession of the house. After she went to her step-mother's, she testifies that Orson Dunbar, one of plaintiffs in error, threatened that if she ever came back he would kick her off the place. Defendant in error acquired no homestead elsewhere. She did not intend to abandon any right that she had when she left her home and went to her step-mother. The possession of the house was obtained without the consent of defendant in error. Under these facts we think the court erred in holding that defendant in error had abandoned her homestead. It is not necessary that a widow should personally reside upon her homestead, under the statute, in order to hold the same. She may leave it unoccupied indefinitely if she intends to return to it and occupy it, or she may lease it and enjoy the rents. In the case before us, defendant in error was alone and her relations with plaintiffs in error were not cordial. Her step-mother was sick and needed her assistance. Led by a kindly and sympathetic spirit for her step-mother, which is conspicuously absent from all the acts of plaintiffs in error toward the one who sustained that relation to them, she went and ministered to her wants. This accounts for her leaving her homestead. She did all that she could do, unless she continued to live in the house alone, to manifest her intention to retain her residence in the homestead. Un-

der these circumstances we are constrained to differ from the learned chancellor who tried the cause below, and must hold that there was no abandonment of the homestead.

In so far as the decree adjudges that the defendant in error, as the widow of Washington Dunbar, is entitled to dower in the 320 acres of land conveyed to plaintiffs in error the decree is affirmed, but in so far as the decree finds that defendant in error is not entitled to a homestead upon the 80 acres conveyed to Harry Dunbar it is reversed on the cross-errors and the cause remanded to the circuit court of Henry county for further proceedings in accordance with the views herein expressed.

*Reversed in part and remanded.*