(No. 27387.—

JOSEPH KAWSZEWICZ *et al.*, Appellees, *vs.* JOSEPHINE KAWSZEWICZ, Appellant.

*Opinion filed January 18, 1944—Rehearing denied March 16, 1944.*

462

Ode L. Rankin, of Chicago, for appellant.

Stanley Werdell, of Chicago, for appellees.

Mr. Justice Stone delivered the opinion of the court:

This cause is here to review a decree of the superior court of Cook county for partition and sale of real estate. This decree was entered on an amended and supplemental complaint filed by Joseph Kawszewicz seeking partition of lots 25 and 26 in a described subdivision in the city of Chicago. John Kawszewicz, father of plaintiff, and Josephine Kawszewicz, wife of John, were made defendants. Later John Kawszewicz filed in the same proceedings his

petition for partition of lot 24 of the same subdivision. These parties will be herein referred to as Joseph, John, and Josephine.

After filing divers complaints and amended complaints, answers thereto and cross complaints by the defendant, the matter came on to be heard as a petition for the partition of lots 24, 25 and 26, in which John and Joseph appeared as co-plaintiffs and Josephine and one Leo Wolfranski, a tenant, appeared as defendants. Wolfranski filed a disclaimer and has not appealed, and so is not a party here. This amended and supplemental complaint consists of three counts in which it is stated that Joseph and Josephine are tenants in common of lots 25 and 26, each owning an undivided one-half interest; that John and Josephine are joint tenants in lot 24, of which John seeks partition. In his petition John also sets up claim to a homestead in lots 24, 25 and 26. On February 24, 1943, a decree was entered ordering partition and appointing commissioners. These commissioners reported that lots 25 and 26 could not be appraised separately because of the fact that the garage on lot 26, which lot was also improved with a two-story frame dwelling, extended over a distance of two feet on lot 25, and recommended that they be sold as one parcel.

The facts out of which this case arose are as follows: Prior to September 7, 1921, John owned in fee all of these three lots. On that day he and Josephine, with whom he had contracted marriage, joined in a deed by which they conveyed the three lots to a third person as nominee, who thereupon reconveyed them to John and Josephine jointly. They were married on September 13, 1921. These deeds were recorded January 20, 1922. John and Josephine moved into the house on lot 26 on March 8, 1922, where they resided together until July 20, 1938, when John took up his residence with his son Joseph, his son by a former marriage. Josephine continued in possession.

On October 11, 1930, John quitclaimed his interest in lots 25 and 26 to Joseph for a good and valuable consideration, which deed was recorded October 14, 1930. Josephine did not join in this deed. On June 6, 1931, John and Josephine borrowed $500 and they, with Joseph and the latter's wife, executed their note for that sum, with a trust deed on lot 26, which note was thereafter, on November 12, 1941, paid and the trust deed was released. The situation, as it appeared at the time the third amended and supplemental complaint was filed in June, 1938, was that lots 25 and 26 were owned by Joseph and Josephine as tenants in common. John in his petition for partition claimed a homestead interest in the three lots. It was admitted by the defendant Josephine, that she was a tenant in common with Joseph in lots 25 and 26 and was a joint tenant with John in lot 24. She denied, however, that John had a homestead interest in the premises but averred that he had abandoned her and the homestead and that she therefore owned the homestead interest in the property.

The matter was referred to a master to take testimony and report his conclusions. His first report was objected to. Some of the objections were sustained and the matter re-referred to him. In his final report he found that lots 24 and 25 are vacant and unimproved and that no homestead rights existed therein; that lot 26 was improved with a two-story frame building and a two-car frame garage, and that this lot had been the homestead of John. He found the interest of the parties as follows: Joseph had an undivided one-half interest in lots 25 and 26 subject to his wife's inchoate right of dower, as tenant in common, and that Josephine and John each had an undivided one-half interest as joint tenants in lot 24. He also found that John had a homestead interest in lot 26 and the buildings thereon. The report of the commissioners appraising the property recommended that because the garage which was a part of the improvements on lot 26,

encroached two feet onto lot 25 lots 25 and 26 should be sold as one parcel.

On April 5, 1943, the decree for partition was modified and a decree entered approving the master's report and ordering sale. It provided that lots 25 and 26 be sold as one parcel; that the three lots should be sold for at least two thirds of the appraised value, as shown by the report of the commissioners, for cash. It provided further that certain tax liens and tax titles outstanding should be considered in the manner hereinafter referred to. The decree further found that John had a homestead interest in lots 25 and 26 and that he had filed his consent in writing to the sale of such homestead and the property was by the decree ordered sold free of homestead interest.

Defendant brings the case here for review claiming that the master's report of conclusions of fact should not have been approved; that the court erred in modifying the decree for partition, entered on February 24, 1943; that the court erred in decreeing that sale be made for two thirds of the appraised value of the parcel less outstanding liens for taxes and tax titles, and in decreeing the sale of lots 25 and 26 as one parcel. Her final and primary contention is that the court erred in finding that John had a homestead interest in lots 25 and 26.

Concerning appellant's contention that the court had no jurisdiction to modify the decree, the record shows that on February 24, 1943, the original decree in partition was entered. On March 8, 1943, plaintiffs moved to vacate it. This motion was continued until April 8, 1943. On March 26, 1943, a motion was made to vacate the "order" of March 8. The court finding that it had jurisdiction of the parties, leave was granted to withdraw the motion of March 8 and appellant contends that this being so, the original decree was restored, and since more than thirty days had expired when the modified decree was entered on April 5, the court acted without jurisdiction. It appears

that to the report of the commissioners which had been filed, certain objections were filed and sustained and the commissioners were ordered to file an amended report within thirty days. The amended report was approved, and on April 5, 1943, the decree for partition and sale was entered. The proceedings before the court between the entry of the original decree for partition of February 24, and the entry of the amended decree of April 5, including the continuance of the motion to vacate the February 24 decree to April 15, indicate that the whole subject matter was before the court on April 5 by various motions, reports and amended reports.

A judgment or decree is final and reviewable when it terminates the litigation on the merits of the case and determines the rights of the parties. (*McDonald* v. *Walsh,* 367 Ill. 529; *People ex rel. Nelson* v. *Stony Island State Savings Bank,* 355 Ill. 401; *Free* v. *Successful Merchant,* 342 Ill. 27.) An order has the essential elements of finality when, if that order be affirmed, the trial court has only to proceed with its execution. (*Rosenthal* v. *Board of Education,* 239 Ill. 29; *Peabody Coal Co.* v. *Industrial Com.* 287 Ill. 407.) It is the duty of the court, under the Partition Act, to determine and decree the rights, titles and interest of all parties to a litigation and render judgment according to such rights. (Ill. Rev. Stat. 1937, chap. 106, sec. 15, p. 2340.) The decree for partition entered February 24 found that John had a homestead right in lot 26, only. The amended decree of April 5 finds that by reason of the encroachment on lot 25, which "first came to the knowledge of plaintiffs as well as their attorneys and this court through the report of the commissioners," lots 25 and 26 cannot be appraised separately and should be sold in one parcel. It also held that John's homestead interest attached to lots 25 and 26. It was incumbent upon the court, when it approved the commissioners' report, to find the rights of the parties as the facts were then shown.

It is a recognized rule in equity that the court may correct its decree, when it has jurisdiction of the proceeding, in cases where it appears that if the court were without jurisdiction or the decree was erroneous on its face, injustice would be done. (*United States* v. *Goldstein,* 271 Fed. 838; *Elston* v. *Elston & Co.* 159 Atl. 731.) We are of the opinion that the court had not lost jurisdiction of the decree in partition and that it was justified in making the amendment in accordance with law and facts in the case.

Concerning the contention that the court erred in decreeing the sale for two thirds of the appraised value "less the outstanding unpaid general taxes, special assessments, and tax titles," the facts are that during the proceedings counsel for plaintiffs offered an affidavit showing that certain tax titles and tax liens were outstanding against the property. Counsel for appellants say it was error to permit this affidavit to be filed. It does not appear, however, that there was any contradiction of the statements made therein, and its effect was to apprise the court that certain liens existed against the property. In a partition suit it is the province of the chancellor to determine what, if any, liens are on the property which should be met before an order of distribution is entered. As we construe the decree of sale entered on April 5, 1943, reference there made to the outstanding unpaid tax liens has to do with the reservation of those amounts before the monies for which the property is sold should be distributed. Counsel for appellant argues that it means that the property was not decreed to be sold for two thirds of the appraised value but for less than that amount. However, since the decree first definitely provides that the property shall be sold for a sum equal to at least two thirds of the valuation put upon it by the commissioners, for cash, we think the construction we have adopted is a just one. Since it does not appear that any objection was made to the correctness of those liens, and since those liens should be paid before dis-

tribution could be made, we see no harmful error resulting. The property must be sold for at least two thirds of the appraised value as provided by the decree and by statute.

It is also contended that the court erred in approving the report of the commissioners to the effect that lots 25 and 26 could not be appraised separately but should be sold together because of the encroachment of the garage upon the former lot. It seems clear, however, that the commissioners could scarcely appraise lots 25 and 26 separately with the encroachment upon lot 25 as it existed. In *Crawford* v. *Hurst*, 316 Ill. 215, this court had occasion to say: "The court usually prefers to rely on the judgment of the commissioners as practical men, who have been selected on account of their ability and experience and who have upon personal inspection made themselves acquainted with the property in question." It is the duty of the commissioners to value each piece or parcel separately where such can be fairly done. A parcel does not necessarily mean one lot as bounded by its descriptive lines, if by reason of building encroachments, as is the case here, such lot must, as a practical matter, be treated as a part of one parcel consisting of two lots. Here the appraisers fairly appraised lots 25 and 26 as one parcel. Under the circumstances here they were justified in so doing and it was not error to confirm that appraisement.

We come then to the principal contention in the case, which is, that it was error to find that John had a homestead interest. It is argued that on July 20, 1938, John voluntarily and of his own free will left the homestead and abandoned it with the intention not to return, and that under the law the homestead then vested in appellant Josephine. Whether one entitled to a homestead may be said to have abandoned it by moving away from it is largely a matter of intention to be determined by the facts of each case. (*Rasmussen* v. *Rasmussen*, 368 Ill. 137.) It is recognized by counsel for both appellant and appellees in

this case that a husband does not forfeit his homestead by abandoning his wife unless the abandonment is wrongful. This issue was presented to the master by extended evidence. Josephine and her three daughters testified that on the evening of July 20, 1938, John struck his wife with a broom and knocked her to the floor and left, declaring he would never return. There is also evidence offered on behalf of Josephine of difficulty between John and Josephine, in which witnesses stated that John had struck her. This was denied by John, who declared that he had never struck his wife but that she had struck him repeatedly. There was offered in his behalf the testimony of a witness by the name of Clement Green, who, so far as the evidence showed, was not interested in the controversy, who testified that he, some ten days after John left his home, went with him to the house to get some of his personal belongings. He testified that he talked to Josephine on that day and that she told him she threw John out of the house and beat him up. It is admitted that she told him that if he did not leave in five minutes she would call the police. The police were later called but John had left.

The master found that by reason of the actions of the three daughters of Josephine during the hearings before him, he disregarded their testimony relating to the occurrence on July 20 "because it was apparent from the manner and demeanor of the three daughters that they were over-anxious to strengthen their mother's version of the incident." A question came up as to the physical condition of John at the time he left his home, which was four years before the time of the hearing. The master called for additional evidence on that matter. As a result of testimony offered on both sides, touching John's physical condition, the master found that John, at the time of the hearing before the master in September and October, 1942, was 78 years of age, feeble both physically and mentally;

that his wife, at the time of the hearing was about 54 years of age, robust and strong, and apparently healthy both physically and mentally. He found that at the time John left home, July 20, 1938, he was 74 years of age and not strong physically; that Josephine was then 50 years of age and strong, and that John by reason of physical infirmities was not able to defend himself and that he then left his home involuntarily and so did not abandon his homestead interest.

Earnest objections are made to this finding. Counsel argue at length that it is not supported by the testimony. However, the master heard and saw the witnesses, and while his conclusions are not considered of the same binding force as those of the chancellor, they are of weight. It also appears that appellant in her answer of June 2, 1938, referred to John as a very old man who since prior to January 1, 1930, had been mentally incompetent. In her answer filed July 28, 1938, she declared that she had kept the upkeep on the property "knowing well that John Kawszewicz was ill * * * because of his old age defendant has supported him." Considering all of these facts and on perusal of the complete record, we are of the opinion that the chancellor was justified in confirming the master's report on this issue and in finding as a matter of fact that John did not voluntarily leave his home and therefore did not abandon his homestead.

It is not necessary that a husband or wife personally reside upon their homestead to hold the same under the statute. (*Dunbar* v. *Dunbar*, 254 Ill. 281.) From a review of the record we are of the opinion that justice was done in this case. The decree of the chancellor is affirmed.

*Decree affirmed.*