**In re Ronald BEEBE & Harriet Beebe, Debtors.**

**Bankruptcy No. 98–00686–PNS3.**

United States Bankruptcy Court,
N.D. Florida,
Pensacola Division.

Aug. 31, 1998.

Sherry F. Chancellor, Pensacola, FL, for plaintiff.

Tracy O. Strom, Ft. Walton Beach, FL, for defendant.

Sherry F. Chancellor, Pensacola, FL, trustee.

## ORDER DENYING TRUSTEE'S OBJECTION TO EXEMPT HOMESTEAD PROPERTY

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came before the Court on July 23, 1998 on the Trustee's Objection to the Debtors' scheduled exempt homestead property. The Trustee objects to the claim by the Debtors of the Clearwater home as exempt property due to its abandonment. The Debtors claim that the homestead property was not abandoned since they intended to take the proceeds from a sale of the property and purchase a new homestead. This case appears to be one of first impression. Having taken testimony and received exhibits into evidence, and having heard argument of counsel, I find the Trustee's objection must be overruled.

### Statement of Facts

The facts of this case are not in dispute. Ronald & Harriet Beebe, ("Debtors") filed for relief under chapter 7 of the Bankruptcy Code on April 3, 1998. Listed as exempt is the debtors' house located in Clearwater, Florida. The debtors lived at this property from 1993 to 1997. In October 1997, Mr. Beebe received employment as a consultant with a company located in Niceville, Florida. Due to his new employment, Mr. Beebe moved to Niceville soon after he signed the employment agreement. His wife joined him in January or February of 1998. After Mr. Beebe signed the employment agreement, the Beebes made repairs on their home and put the house up for sale by owner. Eventually, they signed a listing agreement with a realtor.

After Mrs. Beebe moved to Niceville, their son moved into the debtors' home. He is currently still living in the home while the home is on the market. The debtors still pay the utilities. In exchange for living there, their son does small maintenance items around the house. There has been one offer for the house which fell through. The debtors' son will move out of the home when it is sold.

Since their move from Clearwater, the debtors have made a purchase offer on a house in Niceville with such offer contingent on the sale of their house in Clearwater. The evidence presented establishes that the proceeds of the sale of the Clearwater home will be used to purchase the home in Niceville. The debtors have moved all of their possessions to Niceville and have renewed their automobile tag and used their Niceville rental home address. Mr. Beebe has opened a business bank account in Niceville. Although Mr. Beebe is a self-employed consultant and could perform his work from his home in Clearwater, he testified that it would be inconvenient to do so.

The issue presented is whether homestead status is lost when the debtors leave the home with no intention to return to it but with the good faith intent to reinvest the proceeds of a future sale of the house in a new homestead.

### Applicable Law

On the filing of a petition in bankruptcy, all property of debtor becomes property of the estate. 11 U.S.C. § 541. However, certain property of the debtor may be exempt from the bankruptcy estate. 11 U.S.C. § 522. Under subsection (d) of § 522, a state may chose to opt out of the federal exemptions and substitute state exemptions. Florida has chosen to opt out of the federal exemptions, so state exemptions control the determination of what property is exempt from the bankruptcy estate. One of the strongest Florida exemption is the exemption which protects homestead property.

Article X § 4(a) of the Constitution of the State of Florida protects homestead property from creditors. The provision provides:

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted

for house, filed or other labor performed on the realty, the following property owned by a natural person.

(1) a homestead, if located outside a municipality to the extent of one hundred sixty acres of continuous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family;

This provision providing for a homestead exemption must be liberally construed in order to protect the debtor's property from creditors. *Teasdale v. Frederick (In re Frederick)*, 183 B.R. 968, 970 (Bankr.M.D.Fla.1995). The homestead exemption should be liberally construed in order to protect and preserve the family and family home to the extent that the exemption does not become an instrument of fraud. *Quigley v. Kennedy & Ely Insurance, Inc.*, 207 So.2d 431, 432 (Fla. 1968). A liberal construction allows for the family to retain its shelter and avoid destitution. *Orange Brevard Plumbing v. La Croix*, 137 So.2d 201, 204 (Fla.1962). As stated in *Sherbill v. Miller Manufacturing Co.*, 89 So.2d 28, 31 (Fla.1956), "no policy of this State is more strongly expressed in the constitution, laws and decisions of this State than the policy of our exemption laws."

Exceptions to the homestead exemption should be strictly construed. *Quigley*, 207 So.2d at 432. Abandonment of the homestead is one way that the protection of the homestead exemption may be lost. *Teasdale*, 183 B.R. at 971. Mere absence from the homestead for financial reasons does not constitute abandonment. *Monson v. First National Bank of Bradenton (In re Monson)*, 497 F.2d 135, 138 (5th Cir.1974); *In re Herr*, 197 B.R. 939, 941 (Bankr.S.D.Fla.1996). Once property is shown to be homestead property, the burden of proving that the property is abandoned, and thus no longer exempt, is on the objecting party. *In re Herr*, 197 B.R. at 941. For a debtor to abandon homestead property, a debtor must state an intention to abandon the property

and have an intent of not returning to the property. *Id.* In addition, if the debtor declares another property as homestead, there is abandonment of the prior homestead property. *Id.* Abandonment of homestead property is determined on a case by case basis with a review of the facts and circumstances of each specific case taken into consideration. *Beensen v. Burgess,* 218 So.2d 517, 519 (4th Fla. D.C.A.1969).

In addition to the protection of the actual homestead, Florida courts have extended the protection of Article 10, § 4 of the Florida Constitution to the proceeds from the sale of homestead property. *Orange Brevard Plumbing,* 137 So.2d at 204, 206. Proceeds of a voluntary sale of homestead property is extended the protection given under the Constitution when in good faith it is intended that the proceeds are to be used in the purchase of a new homestead within a reasonable time. *Id.* at 206. The proceeds are only protected up to the amount of the reinvestment in the new homestead. *Id.* Any surplus over the amount reinvested is not exempt but becomes an asset of the debtor. *Id.* The Supreme Court held that the provision in the Constitution was not placed there in order to tie the homestead owner to one particular homestead, especially in our modern society. To hold that the proceeds intended to be reinvested are not exempt from creditors' claims would deny a family which needed to move the full benefit of the constitutionally based homestead exemption and goes against the policy of liberal construction. *Id.*

In *In re Herr, supra,* the issue raised was whether the debtor abandoned his homestead by not living on the property or by putting the property up for sale. The debtor was forced from his home due to Hurricane Andrew. Since he could not afford to rebuild a home on his homestead, the debtor planned to sell the property and use the proceeds to purchase a new homestead. The court held that the debtor had not abandoned his homestead property. *Id.* at 941. Abandonment is more than leaving the property for years and weeds growing on the property. *Id.* In addition, posting a "For Sale" or offering the property for sale is not

abandonment. *Id.* The court's reasoning was that if placing the property up for sale was abandonment, then there would be thousands of homestead properties abandoned unintentionally. *Id.* By just intending to sell the property or signing a listing agreement, homestead property will be placed in "the coffers of attaching creditors", something the exemption was meant to prevent. *Id.* at 942. If a debtor testifies that he intends to retain the homestead, sell it, then reinvest the proceeds in a new homestead, "that is sufficient to prove his intent to maintain his homestead." *Id.* at 941.

In *Beensen,* 218 So.2d at 519, the debtor had entered into a sales contract to sell his homestead. Since the buyers needed to move in immediately, the debtor left the property weeks before the final closing took place. The court held that the property was not abandoned. *Id.*

Even though these cases strongly support the protection of the homestead property, there are cases which find abandonment of the homestead. In *Teasdale,* 183 B.R. at 971, the court held that by placing the homestead property on the market for sale or lease, the debtor no longer had the intent to use and occupy the property, and thus abandoned the homestead property. *Teasdale* can be distinguished from the facts of the present case in that the debtor never really lived in the home. It appears that his son lived there, and whenever the debtor was in town, he stayed there. The case also does not address what the debtor planned to do with the proceeds if the homestead property was sold.

A case similar to the facts in this case found that the debtor had abandoned the property when the debtor accepted a job in another location, moved, placed the homestead on the market, and had her son move into the home. *In re Mackey,* 158 B.R. 509 (Bankr.M.D.Fla.1993). The debtor also testified that she did not plan to return to the homestead property unless she could not sell it and could find a job near the homestead. In a similar case, *In re McCarthy,* 13 B.R. 389, 391 (Bankr.M.D.Fla.1981), the court held that the debtors had abandoned their homestead when they sold their house with the

intention of dividing the net proceeds, since they could not afford to make house payments, and could rent for less. The proceeds of the homestead property were not intended to be reinvested. *Id.* These cases can be distinguished in regards to the issue of proceeds. In both cases, the proceeds from the sale of the homestead were not intended to be reinvested in new homesteads. This is not the case with the Beebes. The Beebes intend to reinvest the proceeds from the sale of their homestead property in Clearwater into a new homestead in Niceville.

### Conclusions of Law

■  While no reported cases deal with the factual scenario presented here, they do support the conclusion that the debtors are entitled to protect their house in Clearwater.

That the house attained homestead status when the debtors purchased it and resided in it in 1993 is not questioned. Nor is it disputed that when they left it to move to Niceville in October of 1997, they intended to sell it and to invest all of the proceeds in a new home as soon as they were able.

It is clear that if they had sold the home prior to moving, the proceeds would be exempt so long as they *intended* to use those proceeds to purchase a new homestead within a reasonable period of time. *Orange Brevard Plumbing v. La Croix.* The fact that they have not been able to convert the home to proceeds prior to their departure should not matter. To hold otherwise would be contrary to the strong policy considerations expressed in *Orange Brevard Plumbing.*

■  This conclusion is further buttressed by *Beensen v. Burgess.* The facts in *Beensen* are very analogous to those in the instant case. There the judgment debtors actually departed from their homestead with no intention on returning three weeks prior to closing on the sale. While there was a pending contract for sale of the homestead and the time period between departure (abandonment?) and receipt of the proceeds was relatively short, these are really the only factors that distinguish *Beensen* from the instant case. During the three week period, the home in *Beensen* was no different than the

**822**

home in this case. Where the intent with respect to the use of the proceeds of sale is the same, neither the time between departure and realization of the proceeds nor the fact that a sale contract is pending instead of the house being offered for sale should be determinative as to the continued protection of the homestead exemption. · As long as there is a continuing good faith intent to sell the homestead, even after it has been vacated, and invest the proceeds in a new homestead within a reasonable time, the homestead will not be considered to have been abandoned.

Accordingly, I find that the debtors' house in Clearwater is exempt. Therefore, it is

ORDERED AND ADJUDGED that the Trustee's Objection to Exempt Homestead Property be and same is hereby overruled.