In re Kenneth Carl WAGENBACH and Laura Jean Wagenbach, Debtors.

Kenneth Carl Wagenbach and Laura Jean Wagenbach, Plaintiffs,

v.

PHI Financial Services, Inc., Defendants.

Bankruptcy No. 98–82787.
Adversary No. 98–8229.

United States Bankruptcy Court,
C.D. Illinois.

April 21, 1999.

Gary T. Rafool, Rafool & Bourne, Peoria, Illinois, for plaintiffs.

George C. Wood, Bloomington, Illinois, for defendant.

Charles C. Covey, Peoria, Illinois, Trustee.

### OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

Before the Court is the objection filed by PHI FINANCIAL SERVICES, INC.

(PHI) to the homestead exemption claimed by the Debtors, KENNETH CARL WAGENBACH and LAURA JEAN WAGENBACH, individually as (KENNETH) and (LAURA) and jointly as (DEBTORS), and the complaint filed by the DEBTORS to avoid the judicial lien held by PHI on that real estate.

The basic facts are not disputed. The DEBTORS resided at 1795 Cruger Road, Washington, Illinois. KENNETH was engaged in farming. On Oct. 6, 1997, PHI obtained a judicial lien against their residence in the amount of $55,257.02. Because of financial difficulties, KENNETH was forced to abandon farming and he began to search for other job opportunities. During the first week of February 1998, KENNETH moved to Kansas to begin new employment there. LAURA and their four children stayed behind and continued to live in the residence. In April of 1998, the DEBTORS entered into a contract to sell the residence. The closing, originally set to occur on May 14, 1998, was delayed because of difficulty in satisfying the liens against the residence. During the last week in May 1998, LAURA and the children moved to Kansas.

The DEBTORS filed a Chapter 7 petition in bankruptcy on July 31, 1998, claiming a homestead exemption of $15,000.00 in the Cruger Road property. At that time, the DEBTORS were renting an apartment in Kansas, on a month-to-month basis, for $150.00 a month. In August of 1998, the DEBTORS moved to a house, which they continue to rent on a month-to-month basis. PHI objected to the DEBTORS' claim of exemption, on the grounds that the DEBTORS did not live in the property at the time the bankruptcy was filed, nor did they intend to move back into it in the future.

The DEBTORS filed a complaint to avoid the judicial lien held by PHI. In response, PHI reasserted its objection to the DEBTORS' claim of homestead exemption. By stipulation of the parties, PHI released its lien and the sale of the house closed on January 14, 1999. The net proceeds received from the sale, in the amount of $13,823.85, were placed in an interest bearing account pending the outcome of these matters. At issue is whether the DEBTORS' claim of homestead exemption is proper. A ruling on this issue will dispose of both pending matters.

The Illinois statute governing homestead exemptions, provides in part as follows:

> Every individual is entitled to an estate of homestead to the extent in value of $7,500 of his or her interest in a farm or lot of land and buildings thereon, a condominium, or personal property, owned or rightly possessed by lease or otherwise and occupied by him or her as a residence, or in a cooperative that owns property that the individual uses as a residence.

735 ILCS 5/12–901.

The proceeds from the sale of a homestead are protected by § 12–906, which provides as follows:

> When a homestead is conveyed by the owner thereof, such conveyance shall not subject the premises to any lien or encumbrance to which it would not be subject in the possession of such owner; and the proceeds thereof, to the extent of the amount of $7,500, shall be exempt from judgment or other process, for one year after the receipt thereof, by the person entitled to the exemption, and if reinvested in a homestead the same shall be entitled to the same exemption as the original homestead.

735 ILCS 5/12–906.

PHI contends that the DEBTORS are not entitled to a homestead exemption in the property because they abandoned it prior to filing their bankruptcy petition. Relying on *Rasmussen v. Rasmussen,* 368 Ill. 137, 13 N.E.2d 166 (1938), PHI focuses upon the court's statement of the applicable law. Summarizing those principles, the court stated:

Whether one entitled to a homestead may be said to have abandoned it by moving away from it is a matter largely of intention to be determined from the facts of each case. *McBride v. Hawthorne*, 268 Ill. 456, 109 N.E. 262; *Ketcham v. Ketcham*, 269 Ill. 584, 109 N.E. 1025. A right to a homestead may be lost by voluntary abandonment without any intention of returning. *Shepard v. Brewer*, 65 Ill. 383. A person's intention may be shown by acts or words or both. The statement that one intends to return may be contradicted by the facts. *Vasey v. Board of Trustees*, 59 Ill. 188. Personal residence of the widow upon the homestead premises is not essential in order to prevent abandonment if, when she leaves, she intends to return and acquires no homestead elsewhere. *Dunbar v. Dunbar*, 254 Ill. 281, 98 N.E. 563. The remarriage of a widow and removal to the home of her second husband raise a presumption of abandonment of her homestead, yet such presumption will yield to explanatory proof showing the removal was meant to be temporary. *Loveless v. Thomas*, 152 Ill. 479, 38 N.E. 907. A removal from the homestead premises will be taken as an abandonment unless it clearly appears that there is an intention to return and occupy them. *Jackson v. Sackett*, 146 Ill. 646, 35 N.E. 234; *Kloss v. Wylezalek*, 207 Ill. 328, 69 N.E. 863, 99 Am.St.Rep. 220. Such intention must be unequivocal, for an equivocal intention to return is not sufficient. *Kloss v. Wylezalek, supra; Cabeen v. Mulligan*, 37 Ill. 230, 87 Am.Dec. 247.

Reversing the trial court's determination that the widow was entitled to a homestead in the premises shared with her former husband, even though she currently resided with her new husband, the court held that she failed to establish that she had an unequivocal intention to return to the homestead. The court stated:

[The widow's] marriage and removal create a presumption of an intention to abandon her homestead and it must clearly appear that she intended to return. Her testimony on that subject, it seems to us, clearly shows that whether she should ever return to the premises depended upon future conditions or circumstances. She left nothing in the premises when she moved out. She went from that homestead to the home of her husband. His home is her home. There is no evidence of any agreement or present intention that they will ever return to her original homestead, other than her statement that she expected to go back some time. Her living in the property of her present husband, in the absence of a clear showing of an intention to return to her original homestead, would entitle her to maintain a claim of right to homestead in his home. It has been the rule since the early case of *Cabeen v. Mulligan, supra*, that under our statute one may not have two homestead estates at the same time. . . .

PHI also relies on *In re Moneer*, 188 B.R. 25 (Bkrtcy.N.D.Ill.1995), a case involving a marriage dissolution and a claim of homestead exemption by the spouse who departed the marital residence. After reciting the same general principles as set forth above, the court continued, stating:

If one spouse separates from the other and abandons the premises, the homestead rights accrue to the spouse who remains. *Anderson v. Anderson*, 42 Ill.App.3d 781, 784, 1 Ill.Dec. 506, 508–09, 356 N.E.2d 788, 790–91 (1976) (collecting cases). A mere temporary absence for any cause deemed sufficient with the intention of returning, however, will not forfeit the right. *See Dixon v. Moller*, 42 Ill.App.3d 688, 691, 1 Ill.Dec. 411, 415, 356 N.E.2d 599, 603 (1976). But, "[w]hen no new homestead has been acquired, absence from the old one, *unless for an extended period of time*, does not create a presumption of abandonment." *Id.* (Emphasis supplied) (citations omitted).

Sustaining the trustee's objection to the debtor's claim of exemption, the court held:

> The Court finds that the Debtor permanently, not temporarily, abandoned the Property as evidenced by his extended period of nonoccupancy. The critical element fatal to the Debtor's claim is his undisputed nonoccupancy of the Property as his residence at the time of the filing of the bankruptcy petition. The Debtor's departure was a voluntary solution to his marital woes. He established a new permanent residence at a new locale with his relatives. Most critically, his departure was not truly involuntary—he was not thrown or ordered out of the Property. He left of his own free will to care for his relatives, mend his mental health, and distance himself from his spouse and daughter.
>
> The evidence failed to demonstrate that the Debtor intended to return and occupy the Property as a homestead. The Court finds that in spite of the Debtor's affidavit, his conduct demonstrated an intention to remain away from the homestead permanently. The Debtor did not leave after a physical assault and battery and under threat of legal criminal proceedings as did the claimant in *Kawszewicz v. Kawszewicz,* 385 Ill. 461, 53 N.E.2d 386. Moreover, there is no evidence of any continued periodic occupancy of the Property, or retention of same as the Debtor's legal address for voter registration and other purposes as noted in *Dixon,* 42 Ill. App.3d 688, 1 Ill.Dec. 411, 356 N.E.2d 599. The mortgage and utility payments protect the Debtor's investment in the Property, but are not outcome determinative on the claimed exemption.

▮ Acknowledging that there is no direct support for their position under Illinois law, the DEBTORS rely upon the recent decision of *In re Beebe,* 224 B.R. 817 (Bkrtcy.N.D.Fla.1998). There, the debtor husband gained new employment and moved to that location. He was joined by his debtor wife several months later. Their home was listed for sale and their son continued to reside there, maintaining the premises until it was sold. Distinguishing cases where courts had found abandonment when debtors had moved away after having taken new employment and put the property up for sale, on the grounds that it was not shown in those cases that the proceeds were intended to be reinvested in new homesteads, the court reached a contrary result:

> That the house attained homestead status when the debtors purchased it and resided in it in 1993 is not questioned. Nor is it disputed that when they left it to move to Niceville in October of 1997, they intended to sell it and to invest all of the proceeds in a new home as soon as they were able.
>
> It is clear that if they had sold the home prior to moving, the proceeds would be exempt so long as they intended to use those proceeds to purchase a new homestead within a reasonable period of time. *Orange Brevard Plumbing v. La Croix,* [137 So.2d 201, 204 (Fla. 1962).] The fact that they have not been able to convert the home to proceeds prior to their departure should not matter. To hold otherwise would be contrary to the strong policy considerations expressed in *Orange Brevard Plumbing.*
>
> This conclusion is further buttressed by *Beensen v. Burgess,* [218 So.2d 517 (4th Fla.DCA 1969) ]. The facts in *Beensen* are very analogous to those in the instant case. There the judgment debtors actually departed from their homestead with no intention on returning three weeks prior to closing on the sale. While there was a pending contract for sale of the homestead and the time period between departure (abandonment?) and receipt of the proceeds was relatively short, these are really the only factors that distinguish *Beensen* from the instant case. During the three week period, the home in *Beensen* was no differ-

ent than the home in this case. Where the intent with respect to the use of the proceeds of sale is the same, neither the time between departure and realization of the proceeds nor the fact that a sale contract is pending instead of the house being offered for sale should be determinative as to the continued protection of the homestead exemption. As long as there is a continuing good faith intent to sell the homestead, even after it has been vacated, and invest the proceeds in a new homestead within a reasonable time, the homestead will not be considered to have been abandoned.

In *In re Herr*, 197 B.R. 939 (Bkrtcy. S.D.Fla.1996), a case referred to by the court in *Beebe*, the home the debtor had resided in for many years was destroyed by Hurricane Andrew. The debtor moved in with a friend and posted a "For Sale" sign in the front yard. At some point, the City of Miami demolished the house. After a judgment creditor attempted to levy on the property, the debtor filed a Chapter 7 petition, listing the property as exempt. Addressing the issue of whether the debtor had abandoned his homestead by not residing on the property or by placing it on the market for sale, the court stated:

> What proof supports Creditor's claim of abandonment? Absence for one or three years alone is not sufficient. Weeds on the property are immaterial. Posting a "For Sale" sign or offering the property for sale is not abandonment. Thousands of "For Sale" signs are posted on homesteads throughout Dade County this very minute and those homesteads are not thereby abandoned. This Court agrees with the rationale of Judge Conrad in the Vermont case of *In re Bernstein*, 62 B.R. 545 (Bankr.D.Vt. 1986). In that case, Judge Conrad held that a debtor's intent to sell, in the future, without more, did not establish present abandonment of homestead so as to defeat the homestead exemption. If a debtor pronounces his intent to abandon his homestead and moves away

intending never to return, that would do it. If a debtor declares other property as homestead, that creates an estoppel against the debtor. When a credible debtor testifies under oath that his intent is to retain his homestead, sell it, and then buy another with the proceeds, that is sufficient to prove his intent to maintain his homestead. In *Bernstein*, the court stated:

> If we were to accept ... [the] argument that intent to sell a homestead is the abandonment of it, then every citizen ... would place their homestead exemptions in the coffers of attaching creditors by the mere execution of a listing agreement with a real estate broker or the signing of a purchase and sales agreement that involved their homestead, at least until they changed their minds.

*In re Bernstein*, 62 B.R. at 549. The Court agrees.

Though the cases relied on by PHI support its position that a right to homestead will be lost by a voluntary abandonment without any intention of returning, those cases involve different factual scenarios. None of those cases deal with a departure from the residence coupled with an attempt to sell by the owner. As the court pointed out in *Moore v. Krueger*, 179 Wis.2d 449, 507 N.W.2d 155 (Wis.Ct.App. 1993), the key issue under such circumstances is not whether the homeowners "abandoned" the property. Reversing the lower court's determination that the homeowners lost their homestead exemption when they moved from the property before it was sold, the court reasoned:

> The [homeowners] argue that even if they do not fall under the temporary removal exception of the owner/occupier requirement, they do fall under the other exception: sale of the house with the intent to use the proceeds to procure another homestead. Therefore, they argue, the trial court should not have considered its finding that they did not

intend to return to their house ... as dispositive. We agree.

One could argue that in order to claim the proceeds exempt, the premises must not have lost its character as a homestead. Further, if the owner moves from the premises with the intent to sell it, it cannot be said that there is temporary removal accompanied by the intention to reoccupy. Therefore, (the creditor) argues that an owner destroys the homestead exemption by moving from the premises prior to a sale so that a later sale is not the sale of a homestead. However, we conclude that this reasoning is contrary to the requirement that [the homestead exemption statute] be liberally construed. (Citation).

Although the homestead exemption is not lost if a removal from the house is temporary, it does not necessarily follow that if the removal is not temporary the exemption is lost. This is because our legislature has also seen fit to extend the homestead exemption to the proceeds from the sale of the homestead if the proceeds are intended to be used to procure another homestead. Obviously, if the owner occupies the homestead up to the time of the sale, the proceeds are from the sale of a homestead and they remain exempt for two years. However, it would be a narrow construction and an unreasonable result if we were to insist that an owner occupy the homestead at the time of the sale in order to maintain the homestead exemption for the sale proceeds.

While [the homestead exemption statute] provides that the homestead exemption is not impaired by temporary removal or by the sale of the homestead, it is ambiguous regarding owners who permanently remove themselves from a home that is for sale, but who intend to use the proceeds from the sale to procure another homestead. When a statute is ambiguous we look, to the scope, subject matter and object of the statute to discern the legislative intent, but we must interpret it in such a way as to avoid an absurd or unreasonable result. (Citation). Furthermore, a statute should not be construed to work an unreasonable or absurd result, even when language seems clear and not ambiguous. (Citation.)

The homestead exemption was enacted pursuant to Article I, Section 17 of the Wisconsin Constitution, which provides: "The privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted." The purpose of the homestead exemption is to preserve judgment debtors and their families their homes and yet leave them at liberty to change homesteads by sale, or to remove for temporary convenience, without forfeiting the exemption. (Citation). To construe [the homestead exemption statute], to impair the homestead exemption merely because the owner removed himself or herself from the premises before the sale was consummated would defeat the purpose of this statute and would thereby produce an unreasonable result. The purpose of the rules of statutory construction is to give effect to legislative intent: "what legislative policy relevant to the purposes of the homestead exemption would require the consummation of the sale before the owner leaves the premises?" (Citation).

It should be noted that this decision does not affect the rule that a person can have only one homestead at a time. (Citation). Therefore, the establishment of a new homestead while the first homestead is still for sale causes an abandonment of the prior homestead. However, here the [homeowners] had not established a new homestead while their [former] home was for sale. It should also be noted that once an owner has removed herself or himself from a homestead with no intent to reoccupy or sell the house and use the proceeds to procure another homestead, the exemp-

tion on that homestead is lost. Such owner cannot thereafter claim the house exempt unless he or she has, through overt acts, reestablished the premises as a homestead. (Citation).

This Court agrees with that reasoning, though it need not go so far here. When KENNETH moved to Kansas to begin his new job, he intended to return if the job did not work out or if the DEBTORS were unable to sell the home. LAURA was still living in the property when the DEBTORS entered into a valid contract for its sale. It is not uncommon for a seller to move from the premises prior to the closing in order that the buyer can take possession upon the closing. In the present case, the delay in the closing was not due to any fault on the part of the DEBTORS, but rather was caused by problems arising from the liens against the home. During the period of June to December of 1998, KENNETH returned to Illinois twice a month for anywhere from three to ten day periods to look after the home, make needed repairs, and mow the lawn. The DEBTORS paid the utilities and maintained the insurance on the home. The DEBTORS are renting a house in Kansas and have not acquired a new homestead. KENNETH testified that they intend to purchase another home with the monies from the sale of their former home, and in fact have been looking at homes in Kansas. Given the rule that homestead laws are to be liberally construed in favor of debtors and based on these facts, this Court finds that the DEBTORS' claim of homestead exemption at the time the bankruptcy petition was filed was proper. The DEBTORS are entitled to avoid the judicial lien held by PHI.

This Opinion is to serve as findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.