THE PEOPLE OF THE STATE OF ILLINOIS, use, etc,

v.

ELIZABETH STITT ET AL.

1. HOMESTEAD—ABSCONDING HUSBAND.—The right of the wife to a homestead under the statute is not forfeited by reason of the husband having absconded.

2. FORFEITURE BY FRAUD.—Neither fraud nor even the commission of a criminal offense can work a forfeiture, or release of the homestead right. Such release or forfeiture, can only be accomplished in the manner provided by statute.

3. ABANDONMENT OF FAMILY.—The fact that the husband has absconded from the State, and left his family to take care of themselves, is an abandonment within the meaning of the law relating to homestead exemptions, and it makes no difference what the motive for such abandonment was, whether fear of criminal prosecution, or dissatisfaction with his family.

4. HOMESTEAD RIGHT IN MORTGAGED PREMISES.—Where land is purchased subject to a pre-existing incumbrance, the homestead right of the purchaser is contingent upon the payment of the incumbrance; but the right attaches as to all the world, except those claiming under the incumbrance, and if the land be sold to satisfy such incumbrance, and the sum realized is more than enough to pay the debt, the homestead right to the extent of $1,000, will attach to the excess in preference to all other claims.

5. HOMESTEAD MAY BE TAKEN IN MONEY.—Under our statute, relating to homesteads, the homestead right is an estate, and when the land is sold under a pre-existing mortgage, the homestead exemption will attach to the money arising from such sale, as to any excess above the amount required to satisfy the mortgage debt.

6. COLLECTOR OF TAXES—BOND—LIEN UPON REAL ESTATE.—The statute makes the bond of the county treasurer a lien upon all his real estate. Where a county treasurer, who owned land incumbered by a mortgage, proved a defaulter, and absconded, and his land was sold under the mortgage for a sum greater than the mortgage debt, held, that the lien of his official bond attached to the proceeds of such sale in preference to all claims of his creditors, except the mortgage debt and the homestead right.

7. GARNISHMENT—INTERPLEADER—JUDGMENT AGAINST GARNISHEE BEFORE JUDGMENT AGAINST DEBTOR.—Where the land of a defaulting county treasurer was sold under a mortgage, and the proceeds of the sale exceeded the amount of the mortgage debt and homestead right, leaving still a balance in the hands of the trustee, and in garnishment proceedings against the trustee by the general creditors of such treasurer, the proper town and school authorities interpleaded, claiming a lien upon such money for taxes collected and not paid over, held, that the statutory lien attached to the

The People v. Stitt.

money, and that it was not necessary that judgment should first be obtained against the defaulting treasurer, as in garnishment proceedings. The interpleaders claim the money, not by virtue of garnishment proceedings, but by an independent proceeding.

Appeal from the Circuit Court of Livingston county; the Hon. Franklin Blades, Judge, presiding. Opinion filed December 4, 1880.

Mr. D. L. Murdock and Mr. C. C. Strawn, for appellants; that where the law creates the lien, it must have precedence over other liens, cited Watt v. Scofield, 76 Ill. 261; Prettyman v. Unland, 77 Ill. 206; Mead v. Thompson, 78 Ill. 62.

Against the claim for homestead exemptions out of the proceeds of the land: McCormick v. Wilcox, 25 Ill. 274; Brown v. Keller, 32 Ill. 151; Caseboldt v. Donaldson, 7 Cent. Law Jour. 285.

If a debtor aliens or conceals his property for the purpose of defrauding his creditors, he will not be entitled to the exemption. Cook v. Scott, 1 Gilm. 333; Getzler v. Saroni, 18 Ill. 511; Smothers v. Holly, 47 Ill. 331; Byrd v. Catlin, 1 Humph. 466; Emerson v. Smith, 51 Pa. 90; Mosely v. Anderson, 40 Miss. 49; Mandlove v. Burton, 1 Ind. 39; Piper v. Johnson, 12 Minn. 60; Brackett v. Watkins, 21 Wend. 68; Cassell v. Williams, 12 Ill. 387; Strause v. Becker, 38 Pa. St. 190.

A debtor who has absconded loses his right to the exemption: Orr v. Box, 22 Minn. 485; Yelverton v. Burton, 26 Pa. St. 351; Finley v. Sly, 44 Ind. 269; State v. Dill, 60 Mo. 133.

Appellants can have the relief they ask by interpleading in this suit: Williams v. Vanmettre, 19 Ill. 293.

Messrs. Wallace & Terry, for appellee Stitt; that this court cannot pass upon the question of excluding evidence unless the evidence offered is presented in the record, cited Curtis v. Baugh, 90 Ill. 184.

A release or forfeiture of homestead rights can only be accomplished in the manner pointed out in the statute: Leopold v. Krause, Ill. Sup. Ct. 1880; Mix v. King, 55 Ill. 434; Pardee v. Lindley, 31 Ill. 174.

Homestead rights may be held in an equity of redemption against all persons but the mortgagee or those claiming under him: Norris v. Morrison, 5 Am. Law Reg. 705; 5 Cent. Law Jour. 145.

The homestead is not affected by the lien of the treasurer's bond: Hume v. Gassett, 43 Ill. 297; Trustees v. Hovey, 6 West. Jur. 827; Buck v. Conlogue, 49 Ill. 391.

LACEY, P. J.    Joseph M. Greenbaum, being the owner of certain real estate situated in Livingston county, conveyed the same by deed of trust to Jonathan Duff, as trustee, to secure a note of Greenbaum for the sum of $4,500 and interest, the date of the trust deed being January 1, 1874.    Afterwards, Joseph H. Stitt became the purchaser of the real estate, subject to the trust deed.    On Sept. 9, 1878, Duff, the trustee, sold the land in question under the power in his trust deed, and out of the proceeds arising from such sale paid off the note which the trust deed was given to secure, and had remaining in his hands the sum of $1,460.78.    On July 11th, 1874, Stitt became the owner of this land by purchase at master's sale, in case of partition between the heirs of Hiram Young, deceased, who was the former owner of the land by purchase by said Hiram Young, deceased, from Greenbaum.    Stitt at once occupied the premises with his family, as his homestead, till the time he absconded, as will be hereafter mentioned, and appellee Elizabeth Stitt, his wife, after her husband had left, continued to occupy the premises with her family as a homestead, until it was sold by the trustee, Duff, under the mortgage given by Greenbaum.

Joseph H. Stitt, treasurer of the county of Livingston, and ex-officio collector of taxes, gave his annual bond as such collector of taxes of said county, Nov. 29, 1876.    About December, A. D. 1877, Stitt being a defaulter as tax collector to a large amount, absconded and left the State.    December 3, 1878, a judgment was confessed in favor of the Livingston County National Bank for $5,187, against Joseph H. Stitt.    One William B. Mason, January 5, 1878, obtained a valid judgment against said Stitt for the sum of $199.37.    On the 4th day of

December, A. D. 1878, the Livingston County National Bank sued out of the circuit court a garnishee summons against Duff, seeking to reach the sum of $1,460.78, balance of sale money in his hands. Jan'y 14, 1879, Duff answers, admitting such surplus in his hands. On Jan'y 17, 1879, the Board of Trustees of Schools of T. 26, R. 6, interpleaded, claiming such surplus to the amount of $907.48, balance due such Board of Trustees from Stitt for taxes which he had failed to turn over, setting up the statutory lien on the land by virtue of the official bond of Stitt, and claiming the money arising from the proceeds of the sale of the real estate. On Jan'y 30, 1879, the commissioners of highways of T. 26, R. 6, also interpleaded, claiming the sum of $955.21 tax money, due them under the same right as the Board of Trustees of Schools. January 21, 1879, Elizabeth Stitt, wife of Joseph H. Stitt, also interpleaded, claiming $1,000 out of the money in the hands of Duff, as her homestead right under the statute. March 29, 1879, William D. Mason interpleaded, claiming his right to $199.37, out of the money in the hands of Duff, to satisfy his judgment. At the January term, 1879, of the circuit court, the several causes of action were consolidated and tried by the court without a jury, and taken under advisement till the January term, 1880, when the court rendered judgment, ordering Duff, as such garnishee, to pay $1,000 to the claimant Elizabeth Stitt, and out of the remainder, $199.37 to William B. Mason, and the balance to the Livingston County National Bank, to apply on its judgment.

From this judgment the board of trustees of schools and the commissioners of highways of Town 26, R. 6, have appealed to this court, assigning for error the refusal of the court to pay them in full as far as the money in the hands of Duff would go, and in postponing them to the rights of Mason and the Livingston County National Bank.

In opposition to the claim of Mrs. Stitt to the $1,000, homestead money, it is urged: 1. That the exemption does not arise except upon a sale of the premises by the owner, and not when the land was sold by virtue of an incumbrance. 2. That the right of the homestead was contingent on the payment of

the Greenbaum trust deed. 3. That Stitt forfeited his right by absconding. 4. Joseph H. Stitt did not desert his family.

There is no force in the objection that the homestead right is forfeited by Stitt, on account of his having absconded, and that he has been guilty of fraud. The Supreme Court has lately decided that "no conveyance of property, exempt from execution can be considered fraudulent as against a creditor. Injury is an essential element of fraud, and where injury is wanting there can be no fraud."

Neither fraud, nor even the commission of a criminal offense, can work a release or forfeiture of the homestead right. Such release or forfeiture can only be accomplished in the manner provided by statute. Leopold et al. v. Krause, 95 Ill. 440. As to the objection that Joseph H. Stitt, has not deserted his family, and that therefore the widow cannot claim the benefit of the homestead right of her husband, under section 2 of the homestead act, we think is not well taken. The evidence shows that Mr. Stitt absconded and left Livingston county in Dec., 1877, telling his family he was going to Eureka in this state, and that instead of going to Eureka, he left the state of Illinois, and since that time he has not returned, nor has he in any way provided for, or looked after his family. They have had to look after themselves, and to earn their own living, and the homestead itself has been sold under mortgage. The family understand that he has entirely abandoned them. The evidence, we think, is abundant to establish the fact of abandonment. It matters not what his motives were for leaving, whether it was dissatisfaction with his family or fear of criminal prosecution, the effect is the same on his family. They need a homestead as much in the one case as the other.

Was the right of the homestead contingent on the payment of the Greenbaum trust deed? As to that deed, unquestionably it was. The homestead, as well as all other interest in the land was pledged to the payment of the debt secured by that deed, but as against all other claims, the homestead had precedence. It attached before any other liens. Stitt was the "owner and rightful possessor" of the land, and a homestead right attached as to all the world, except the trust deed.

There was more than enough land to pay off the trust deed and leave the homestead free of incumbrance. It would not be consonant with justice, or a fair and equitable interpretation of the homestead act, to hold the intendment to be that when the sale took place under the trust deed, that the homestead right should be regarded as first sold in order to defeat such right. If any such intent could be indulged in, it should be the contrary. The land being in value enough to satisfy the homestead right and the trust deed, why not allow them both to be satisfied. What other interest has any right to complain?

Again, under the provisions of our statute can the homestead exemption attach to the money, arising from the sale of the homestead under the trust deed. We are of the opinion that under the provisions and intent and meaning of our statute, it can.

Section one of the homestead act, provides that every householder having a family, shall be entitled to an estate of homestead, to the extent of $1,000, etc. It is not a mere possessory right, but an estate, and so construed by the Supreme Court. This statute differs from what it was originally. Originally the homestead was merely a possessory right. It is claimed that section six of the statute only exempts the proceeds of the sale of the homestead to the extent of $1,000, where the owner himself makes the sale, and this exemption shall continue for one year. This is the language of that section, and in its literal terms would not apply to any case except where the owner himself makes the sale, and would not apply in a case where the homestead premises were sold under sections eight, and ten, eleven and twelve. In the eighth section it is provided, that in the enforcement of a lien in a court of equity upon premises including the homestead, if such right is not waived or released, the court may * * * if the value of the premises exceed the exemption, and the premises cannot be divided, order the sale of the whole, and the payment of the amount of the exemption to the person entitled thereto, and a similar provision is found in sections eleven and twelve. In neither of these sections is it provided that the money shall be thereafter exempt. But can it be doubted that the money would be, for at least

one year, the same as in section number six; otherwise there would be no protection for the homestead right in case of sale.

In section seven it is provided that wherever a building exempt as a homestead is insured in favor of the person entitled to the exemption, and a loss occurs entitling such person to the insurance, such insurance money shall be exempt to the same extent as the building would have been had it not been destroyed. Yet it would not be supposed that this meant an unlimited exemption in time.

It will be seen by this that it was the intention of the legislature to protect a party in his homestead, and in case he sold it himself, or it was sold by any legal agency in order to satisfy debts, make partition, or for other causes, the money received in exchange for the homestead should also be exempt until, at least, it could be re-invested according to the statute. We see no reason to doubt that Mrs. Stitt was entitled to this one thousand dollars, or that it was exempt in her hands from the payment of her husband's debts.

The court below then did not err in awarding her the one thousand dollars as her homestead estate reduced to money.

But another question arises, as to who is entitled to receive the balance of the money in the hands of Duff, being $460.78, the Bank and Mason, or the board of trustees, of schools and the commissioners of highways?

Section 146 of the revenue act provides that the treasurer's bond " when approved and recorded shall be a lien against the real estate of such collector until he shall have complied with the conditions thereof. " R. S. 1874, Chap. 120, sec. 146.

This bond was a prior lien on the real estate in question, as against all the claims involved in this litigation, except the Greenbaum trust deed and the homestead of Mrs. Stitt. Did the court err in excluding the evidence of appellants tending to prove their claims arising under the collector's bond of Stitt and in deciding that the appellants had no right to the money accruing to them by virtue of the failure of the collector to pay over the taxes due them, as he was required by law and the terms of the bond to do.

It is insisted that appellants cannot be heard in this pro-

The People v. Stitt.

ceeding because of Sec. 10, Chap 62, R. S. 1874, which provides that " no final judgment shall be entered against a garnishee in any attachment proceeding until the plaintiff shall have recovered a judgment against the defendant. " Section eleven of the same statute provides: " If it shall appear that any goods, chattels, choses in action, credits or effects in the hands of a garnishee are claimed by any other person, by force of an assignment by the defendant or otherwise, the court or justice of the peace, shall permit such claimant to maintain his right, etc. " Sec. 12 provides: " If such claimant appears, he may be admitted as a party to the suit, so far as respects his title to the property in question, and may allege and prove any facts not stated nor denied by the garnishee, and such allegation shall be determined in the manner hereinafter provided, " etc.

We are of the opinion that by virtue of the eleventh and twelfth sections, the appellants had a right to come in and interplead in the garnishee proceedings, without first getting judgment, against the original debtor, Stitt. Section ten has more particular reference to the attachment proceeding proper, where suit is commenced against the original debtor and garnishee are summoned at the same time.

Sections eleven and twelve were intended to apply to a case where the garnishee has been served, and has effects in his hands which, but for the claim of some other party he must surrender to the party suing out the writ of garnishment. If the interpleader has a claim to those effects either by assignment, or otherwise, he has a right to come in and claim it before it is too late. No common debtor could come in and interplead without some claim on the effects in the hands of the garnishee.

It is seen that the collector's bond was a lien on the land the same as a mortgage would be; such a lien as a court of equity under proper circumstances would enforce. Richardson et al. v. Crawford et al. 94 Ill. 165. The bond was a lien on the land, subject to the trust deed and the homestead. When the land was sold, the lien attached to the money in the hands of the garnishee, Duff. He ought not to pay it out to another. The

whole amount, after the homestead was satisfied, belonged to the appellants. They have interpleaded and claim the money, not by virtue of an attachment or garnishee proceedings, but independently of them, by virtue of another claim entirely, and have a right, if they prove their case, to have this money paid over to them by Duff, *pro rata*, according to the amount of each one's claim.

For these reasons the judgment of the court below, as to the interpleader of appellants, is reversed, and affirmed as to the interpleader of Elizabeth Stitt. Judgment for one-half the costs, each, against the Livingston County National Bank and William B. Mason.

Affirmed and reversed in part, and cause remanded.