*In re* ESTATE OF SYLVIA RITTER MILLHOUSE, Deceased.—(JEROME H. MILLHOUSE, Adm'r of the Estate of Sylvia Ritter Millhouse, Deceased, Plaintiff-Appellee, *v.* DAVID NASH *et al.*, Defendants—(LEONA HILBERT *et al.*, Intervening Creditors-Appellants).)

Fourth District   No. 14686

Opinion filed June 9, 1978.

Robert L. Douglas, of Robinson, for appellants.

Massey, Anderson & Gibson, of Paris (Earl R. Anderson, of counsel), for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

Sylvia Ritter Millhouse died.

This rather mundane event—considering the transitory existence of this vale of tears—would not normally be of any momentous legal note.

However, immediately following her demise, it was discovered that about $1,800,000 was missing from the Marshall Loan Company, and Sylvia Ritter Millhouse was managing partner of that unincorporated financial institution.

Yet—her estate was insolvent. All that really existed was a house and lot on the credit side of the ledger, and over $1,700,000 in claims on the debit sheet. Her surviving husband-administrator was awarded homestead upon the sale of the realty to pay debts, and this posits the precise point on appeal: Can a surviving spouse claim homestead exemption from funds "defalcated" by the deceased spouse? Or is he barred by having unintentionally benefited from the fruits of the crime?

He can. He isn't. We affirm.

More specifically, the facts are these: At the time of her marriage to Jerome in 1953, Sylvia was the owner of the residence property involved

in this proceeding. It had been given to her by her father in 1949 or 1950 and she was the title owner at the time of her death. They set up housekeeping there at the time of their marriage and inhabited it as their family residence until her death on December 12, 1973. Jerome Millhouse continued to live in the residence after his wife's death and it was his residence at the time of the hearing below. Sylvia was the manager of a loan company and drew a salary of $700 per month, while Jerome was a barber with an income from his business of about $5,000 per year. Jerome testified that his wife contributed substantially to their family expenses, that she bought most of the groceries, and that during the last five years of her life "all the extras and the pluses of life" that he enjoyed were because of the money that his wife supplied.

Also below, David Ritter Nash (decedent's son by a prior marriage) testified that in 1971 his mother had shown him a deed to the property in question and told him to record it if anything happened to her. They made "a sort of a verbal agreement" that he would not cause her husband (Jerome) to move out of the residence. He gave the deed back to her and she put it in the family lock box in the loan company office. After his mother's death, he recorded the deed to the property which conveyed title to him. (David's wife, Norma Jean Nash, corroborated the substance of his testimony.)

The 1972 Federal and State joint income tax returns of Jerome and Sylvia Millhouse were admitted into evidence, reflecting a $2,350 net profit from the barber shop operated by Jerome, and $13,961 net income from Sylvia's partnership in the Marshall Loan Company. Jerome Millhouse testified that as a barber he had earned about $5,000 annual income in the three to four years before Sylvia's death, and although he did not know exactly what her income was, he assumed Sylvia had a salary from the loan company. He did say that she contributed substantially to the family expenses, purchasing most of the groceries and household items.

An accountant by the name of Larry Woodard had been appointed receiver for the Marshall Loan Company and he testified that Sylvia Ritter Millhouse and her brother shared a one-half interest in the loan company which was operated as a partnership. In fact, Sylvia was the principal operating officer of the loan institution. Although Woodard did not audit the records of the loan company, he performed a "review" which disclosed a shortage of $1,800,000. The records reflected that there had not been any net income to the company for five years prior to Sylvia's death, that she had received a monthly salary of $700 (plus a share in the profits), and that the company had other salaried employees who had also been paid.

The trial judge found that the deed from Sylvia Ritter Millhouse to her son (David Ritter Nash) was void for lack of delivery, that Sylvia possessed a homestead exemption in her personal residence at the time of her death, and that her surviving spouse (Jerome Millhouse), who continued to reside there, had the benefit of that exemption, which in turn would attach to the proceeds of any sale of the real estate.

Now to the issue.

The creditors contend that Millhouse should not be entitled to the homestead exemption because he benefited from the fruits of his wife's crime, and argue that the record shows Sylvia embezzled or stole $1,800,000 from the loan company. (They do admit, however, that they have found no case on point to support their contention.)

We must necessarily underscore here the simple fact that Sylvia was never charged with any crime related to the insolvency of the loan company, nor was she ever convicted of any offense relative to the monetary deficiency, nor did the court make any finding that she had improperly obtained the money she used to support herself and her husband. Furthermore, there was no audit explanation of where the money actually went. From a proof standpoint, it is only supposition that she obtained the money—an inference drawn from highly questionable circumstances perhaps, but most assuredly not proof. Thus, the creditors' argument that she "defalcated" the money is, as Jerome Millhouse suggests, merely their conclusion. Also a fact that is of considerable importance is that the property in question clearly was given to decedent by her father, and there can be no question but that the property was not obtained through "ill-gotten gains."

The Homestead Act (Ill. Rev. Stat. 1975, ch. 52, par. 1) states that "Every householder having a family shall be entitled to an estate of homestead to the extent in value of $10,000, in the farm or lot of land and buildings thereon owned or rightly possessed by lease or otherwise and occupied by him or her as a residence; and such homestead, and all right and title therein, shall be exempt from attachment, judgment, levy or execution sale for the payment of his debts or other purposes * * *." And section 2 of that Act declares that "Such exemption shall continue after the death of such householder, for the benefit of the husband or wife surviving, so long as he or she continues to occupy such homestead, * * *."

The position of Millhouse is that Sylvia was "householder with family" entitled to a $10,000 exemption of homestead in the family residence and, upon her death, that exemption continued for his benefit. He argues that even if Sylvia had been guilty of a crime, her homestead exemption was not extinguished under Illinois law.

Nearly 100 years ago, in *Leupold v. Krause* (1880), 95 Ill. 440, the defendants fraudulently conveyed real estate (including their homestead) in order to defeat the claim of a creditor. But the creditor obtained a judgment against them and purchased the property at an execution sale. In the suit that followed, the trial court ruled that the conveyances were fraudulent and the defendants appealed, contending that the execution of sale was void because no homestead had been set off. Our supreme court ruled that despite this fraudulent action, the defendants were entitled to a set-off for homestead.

> "Courts of equity, in affording relief against fraud, seek simply to restore the parties, as near as may be, to the positions they would have occupied had no fraud been perpetrated. Neither fraud, nor even a commission of the criminal offense, can work a release or forfeiture of the right of homestead. Such release or forfeiture can only be accomplished in the manner provided by the statute." 95 Ill. 440, 445.

See also *DeMartini v. DeMartini* (1943), 385 Ill. 128, 52 N.E.2d 138.

And in *Redden v. Potter* (1885), 16 Ill. App. 265, we see a situation where a party who conveyed property in fraud of her creditors was awarded a homestead exemption in the property wrongfully conveyed, even though the fraudulent conveyance was set aside by the court.

Our creditors here, however, contend that *Leupold, DeMartini,* and *Redden*—all cases concerning fraudulent conveyances—do not apply to the instant case. But independent of the briefs presented to us, we have rooted up another old chestnut, hoary with age, but quite apropos to our case. In *People v. Stitt* (1880), 7 Ill. App. 294, an erstwhile gentleman by the name of Stitt purchased some real estate subject to a trust deed and then occupied it as a family residence. It so happened that, being the county treasurer and ex-officio tax collector, Stitt defaulted on the tax collections and absconded. Thereafter, Stitt's wife and family continued to live on the property. The holder of the trust deed then sold the property to pay the secured note, realized a surplus of nearly $1,500, and Mrs. Stitt claimed $1,000 of the surplus as a homestead exemption. Several other parties claimed the surplus to reimburse them for money paid to Stitt as taxes but which were never deposited in the tax fund. They argued, *inter alia*, that Stitt forfeited his homestead right by his illegal action in absconding. But—in line with *Leupold*—the homestead exemption was awarded to Mrs. Stitt and on appeal such ruling was affirmed.

Citing *Leupold*, the *Stitt* court said: "Neither fraud, nor even the commission of a criminal offense, can work a release or forfeiture of the homestead right. Such release or forfeiture can only be accomplished in the manner provided by statute." 7 Ill. App. 294, 298.

*Ergo*: Even had Sylvia Ritter Millhouse been *convicted* of the shortages, her surviving spouse was entitled to homestead and the trial court properly gave it to him.

Affirmed.

REARDON, P. J., and TRAPP, J., concur.