**In re Jerry Lee GILLEY, Debtor.**

**Bankruptcy No. 96–16913–8G2.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 8, 1999.

Bernard J. Morse, Morse, Berman & Gomez, P.A., Tampa, FL, for Debtor.

Terry E. Smith, Bradenton, FL, trustee.

Lori A. Heim, Mason & Associates, P.A., Clearwater, FL, for United States of America.

## ORDER ON TRUSTEE'S OBJECTION TO DEBTOR'S PROPERTY CLAIMED AS EXEMPT

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for a final evidentiary hearing to consider the Trustee's Objection to Debtor's Property Claimed as Exempt filed by Terry E. Smith, the Standing Chapter 12 Trustee. The Trustee contends in his Objection that the value of the personal property claimed as exempt by the Debtor, Jerry Lee Gilley, exceeds the constitutional and statutory limits on such exemptions. The Trustee also contends that the Debtor is not entitled as a matter of law to claim three particular parcels of real property as exempt.

### Background

The Debtor filed his petition under chapter 12 of the Bankruptcy Code on December 9, 1996. The Debtor's mother, Doris Gilley, also filed a petition under chapter 12 on the same date. On his "Schedule C—Property Claimed as Exempt," the Debtor claimed his interest in four parcels of real property as exempt pursuant to Article X, Section 4 of the Florida Constitution and Chapter 222 of the Florida Statutes. These four parcels are generally described on Schedule C as (1) the Collier County property, (2) the Holmes County property, (3) the Pasco County property (Parcel 08–25–22), and (4) the Pasco County property (Parcel 5–25–22). The Debtor's Schedule C also includes the following statement:

Debtor's Counsel, Mark Ossinsky, holds proceeds of settlement of claim against Dupont Corp. and Debtor is owed additional monies under such agreement. The agreement contains a provision that its terms are confidential, and, accordingly, Debtor does not now disclose the terms of the agreement of [sic] the

amount of monies held pending Court determination of his duty to do so.

The Debtor claims that these settlement proceeds are exempt pursuant to Article X, Section 4 of the Florida Constitution and Chapter 222 of the Florida Statutes.

### Real property

At the final evidentiary hearing, the Debtor conceded that the Collier County property and the Holmes County property did not constitute his homestead, and the Debtor did not assert any other basis for claiming the Collier County and Holmes County properties as exempt.

It further appears, however, that one of the two Pasco County parcels consists of 30 acres upon which the Debtor resides. The Debtor's mother, Doris Gilley, resides on the second parcel located in Pasco County, which consists of approximately 20 acres. The Debtor testified that he had lived on the 30 acre parcel for 13 or 14 years, and that his mother had lived on the 20 acre parcel since the Debtor was born. The Debtor further testified that the parcels are located within the boundaries of Pasco County, and that the property is not located within any municipality.

Article X, Section 4 of the Constitution of the State of Florida provides:

**SECTION 4. Homestead; exemptions.—**

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for the house, field or other labor performed on the realty, the following property owned by a natural person:

(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family;

(2) personal property to the value of one thousand dollars.

Since the Debtor resided on the 30 acre parcel of real property located in Pasco County at the time that he filed his bankruptcy petition, and since the Trustee has not contended that the property is situated within any municipality, the Debtor's claim of exemption as to his interest in the 30 acre parcel of Pasco County property should be allowed.

With respect to the 20 acre parcel located in Pasco County, the Trustee's Objection should be sustained in this case, and the claim of exemption by Jerry Lee Gilley of any interest he may have in this property should be disallowed. It appears, however, that Doris Gilley's claim of exemption as to this parcel may be allowable in her separate chapter 12 case, Case No. 96–16912–8G2.

The Trustee's Objection as to the Collier County real property and the Holmes County real property should be sustained based on the Debtor's concession at trial that the properties do not constitute his homestead, and the Debtor's claim of exemption as to those properties should be disallowed.

### Settlement Proceeds

As set forth above, the Debtor claimed his interest in certain settlement proceeds as exempt on his schedule of exemptions.

The Debtor is a farmer who previously grew strawberries and other fruits and vegetables on the property surrounding his home in Pasco County. In the 1980's, the Debtor sprayed Benlate, a chemical fungicide, on his property. Benlate was manufactured by E.I. DuPont Company (DuPont). The property was contaminated as a result of the use of Benlate, and is not now suitable for growing either straw-

berries or the other crops previously raised on the property. The Debtor and his mother, as well as other farmers, filed an action against DuPont seeking compensation for the damage to their property caused by the application of Benlate. The Debtor testified that his lawsuit against DuPont sought damages only as to the two Pasco County parcels, and not the Collier County or Holmes County property.

A settlement ultimately was reached with DuPont. The Debtor asserts that the settlement agreement is confidential and that he is not permitted to disclose its terms. Neither the written settlement document nor the precise settlement amount to which the Debtor is entitled is in evidence. The Debtor testified, however, that he and his mother collectively were entitled to receive approximately $1,085,000 as the total award from DuPont. The Debtor indicated that he believes that the entire amount of the settlement is compensation for damage to the property. The Debtor further testified that approximately $540,000, representing a portion of the settlement proceeds, was delivered to his attorney in Orlando, and that those funds were in the attorney's account at the time that the chapter 12 case was filed. The Debtor indicated that all aspects of the settlement have not been completed at this point, and the settlement proceeds have not been allocated between the two parcels of real property in Pasco County. The Debtor indicated that since the case was filed he and his mother have received approximately $370,000 of the settlement proceeds from their attorney and have placed those proceeds into a separate account. Finally, the Debtor testified that he and his mother have used some of the settlement proceeds to rehabilitate the property by constructing fences, an irrigation system, and other structures, by planting grass, and by other restoration efforts, and that they intend to use the balance of the settlement proceeds to rehabilitate and restore the property.

The Debtor contends that the settlement proceeds are exempt because they represent compensation for the loss of value of his homestead real property, and that the proceeds therefore maintain the same exempt character as the underlying homestead property. The Debtor contends that the settlement proceeds are analogous to the proceeds of a fire insurance contract, which qualify for exempt status under Florida law, provided that the insured property itself initially qualified for the exemption. The Debtor cites *Kohn v. Coats*, 103 Fla. 264, 138 So. 760 (1931), and *In re Sanders*, 72 B.R. 124 (Bankr. M.D.Fla.1987) for this proposition. The Debtor also cites a series of cases which primarily hold that Florida's homestead exemption extends to any proceeds of a voluntary sale of homestead real property, if the proceeds are segregated and the debtor intends to reinvest the proceeds in a new homestead within a reasonable time. *In re Englander*, 95 F.3d 1028 (11th Cir. 1996); *Orange Brevard Plumbing & Heating Company v. La Croix*, 137 So.2d 201 (Fla.1962); *Sun First National Bank of Orlando v. Gieger*, 402 So.2d 428 (Fla.5th DCA 1981).

The Trustee contends that the proceeds are subject to the limitations established by the Constitution of the State of Florida for personal property. Article X, Section 4 of the Florida Constitution provides that "personal property to the value of one thousand dollars" shall be exempt from forced sale. The Trustee asserts in his Objection that the personal property claimed as exempt by the Debtor is "claimable but the value of the property exceeds the limits set forth" by the Constitution and by statute. Implicit in the Trustee's objection is the view that the cash proceeds did not assume or retain the homestead character of the Debtor's real property, and may not be claimed as exempt under the constitutional provision for homestead real property.

■ The issue in this case, therefore, is whether a debtor may properly claim as

exempt, pursuant to Florida's homestead exemption law, the cash proceeds of a cause of action based on damage to the debtor's homestead real property, when the proceeds are segregated, and when the Debtor intends to reinvest the proceeds into the homestead real property to rehabilitate the property.

■ It is well-established, of course, that Florida's homestead exemption should be liberally construed in favor of the exemption. The purpose of the homestead exemption is broadly described to protect the family from misfortune, without any requirement that the misfortune arise from a financial debt. *Butterworth v. Caggiano*, 605 So.2d 56, 58, 60 (Fla.1992).

■ The Florida Supreme Court has concluded that the proceeds of the involuntary conversion of homestead real property are exempt. In *Hill v. First National Bank of Marianna et al.*, 79 Fla. 391, 84 So. 190 (1920), the Florida Supreme Court considered whether the amount recovered as compensation for the injury sustained because of an unlawful seizure and sale of exempt property was exempt. In that case, the bank executed a judgment and sold the real property on which the plaintiff lived, knowing that it was her homestead. The bank also sold exempt personal property of the plaintiff, a cow and a calf. The Florida Supreme Court stated:

> The actual damage sustained by her [the plaintiff] because of the injury suffered as a result of the trespass by defendants upon the exempt real property and the conversion by them of the exempt personalty, and the judgment recovered therefor, partake of the nature of the homestead property and are also exempt.
>
> ... [W]here injury has been sustained because of an unlawful seizure and sale of exempt property, the amount recovered as compensation for such injury within the constitutional limit would likewise be held exempt....

The homestead right is not limited to a mere holding of the legal title to the exempt property 'from forced sale'; it contemplates and includes the beneficial, peaceful, and uninterrupted use and enjoyment of such property. Such right is superior to the claims of creditors. The policy of the law conferring it is to preserve the home for the family even at the sacrifice of just demands and to protect the family from destitution and want.

*Hill v. First National Bank of Marianna et al.*, 79 Fla. 391, 397–8, 84 So. 190, 192 (Fla.1920)(Emphasis added).

■ The Florida Supreme Court has also concluded that insurance proceeds payable because of damage to the homestead are exempt. In *Kohn et al. v. Coats*, 103 Fla. 264, 138 So. 760 (Fla.1931), the Florida Supreme Court held: "[I]n view of the purpose for which the homestead is provided, the exemption from execution or forced sale of designated property for that purpose extends to the proceeds of a fire insurance policy due or to be paid for its destruction." *Kohn et al. v. Coats*, 138 So. at 761. Considering the reason for its holding, the Florida Supreme Court stated: "... to hold that creditors could seize the proceeds of the insurance policy would ... deprive the insured of the means provided to take the place of and restore his homestead." *Id.* at 761.

■ The Florida Supreme Court has also considered whether the proceeds of the voluntary sale of homestead real property are exempt. See *Orange Brevard Plumbing & Heating Company v. La Croix*, 137 So.2d 201 (Fla.1962). Under the circumstances described in that case, the proceeds of the voluntary disposition of homestead property may continue to receive the protection of the exemption if the proceeds are segregated and if the debtor intends to reinvest the proceeds in a new homestead within a reasonable period of time.

After a full consideration of the applicable authorities representing both views on the issue before us, and in recognition of the liberal interpretation of the homestead exemption to which this court is committed, we hold the proceeds of a voluntary sale of a homestead to be exempt from the claims of creditors just as the homestead itself is exempt if, and only if, the vendor shows, by a preponderance of the evidence an abiding good faith intention prior to and at the time of the sale of the homestead to reinvest the proceeds thereof in another homestead within a reasonable time. Moreover, only *so much* of the proceeds of the sale as are intended to be reinvested in another homestead may be exempt under this holding. Any surplus over and above that amount should be treated as general assets of the debtor. We further hold that in order to satisfy the requirements of the exemption the funds must not be commingled with other monies of the vendor but must be kept separate and apart and held for the sole purpose of acquiring another home. The proceeds of the sale are not exempt if they are not reinvested in another homestead in a reasonable time or if they are held for the general purposes of the vendor.

.      .      .      .      .

The principle established by this decision is akin to the doctrine of equitable conversion, which obtains in this state. *Trotter v. Van Pelt,* 144 Fla. 517, 198 So. 215, 131 A.L.R. 1018 (Fla.1940). The funds resulting from the voluntary sale of the homestead are "converted", and while "in transit" assume the character of the exempt real property, dependent, however, upon a bona fide intent of the seller to reinvest such funds in another homestead within a reasonable time. The requirement as to the intention of the seller to reinvest is necessary in order to carry into the effect the real, underlying purpose of the homestead exemption as hereinbefore outlined.

*Orange Brevard Plumbing & Heating Company v. La Croix,* 137 So.2d 201, 206–7 (Fla.1962)(Emphasis in original). See, also, *Sun First National Bank of Orlando v. Gieger,* 402 So.2d 428 (Fla.5th DCA 1981).

The Court concludes in this case that the proceeds of the claim against DuPont are the type of proceeds that retain the homestead character of the underlying real property. A portion of the Debtor's homestead real property was used for agricultural purposes. The settlement funds represent compensation to the Debtor for the diminution in the value of his homestead real property for those agricultural purposes. The settlement funds do not appear to represent the proceeds of a claim for any personal suffering or damages unrelated to the value of the property. The Court concludes that since the funds represent compensation for the loss in value of the property resulting from the use of the chemical fungicide, they essentially are a substitute for the homestead real property.

Additionally, in this case the Debtor is providing the assurances of segregating the settlement proceeds and reinvesting them into the damaged homestead real property. While segregation and reinvestment do not appear to be required to establish that the amounts in compensation for the involuntary conversion of or damage to homestead real property are entitled to the protections of the homestead exemption, the Debtor has nevertheless provided these assurances, and the Court believes that these assurances are appropriate in the circumstances. The proceeds are segregated to the extent that they can be segregated at this point in the litigation with DuPont, and the Court concludes that the Debtor has the good faith intent to reinvest the proceeds into the property to rehabilitate the property within a reasonable period of time.

Accordingly, since the settlement funds are directly tied to the homestead property and intended to replace the lost value

that the Debtor would have been entitled to claim but for the damage caused by DuPont's product while the Debtor was the owner of the property, since the funds are segregated, and since the Debtor intends to reinvest the funds in the property to rehabilitate the property within a reasonable time, the Debtor should be entitled to claim the settlement proceeds as exempt under Florida's homestead laws. To deprive the Debtor of this exemption would, in the words of the Florida Supreme Court, "deprive [him] of the means provided to take the place of and restore his homestead." *Kohn et al. v. Coats*, 103 Fla. 264, 266, 138 So. 760, 761 (1931).

### Conclusion

For the reasons expressed above, the Trustee's objection as to the Debtor's claim of exemption of his interest in real property in Collier County and in Holmes County, on which he does not reside, and his interest in the 20 acre parcel in Pasco County on which he does not reside, should be sustained. The Trustee's objection as to the Debtor's claim of exemption of his interest in the 30 acre parcel of real property in Pasco County on which the Debtor resides should be overruled.

With respect to the Trustee's objection to the Debtor's claim of exemption of the Debtor's interest in the proceeds of the settlement with DuPont for the damage resulting from the application of the chemical fungicide Benlate to his homestead real property in Pasco County, the Court concludes for the reasons expressed above that the objection should be overruled.

> ... At times, also, separate and distinct chameleons, one of one size and one of another, perch on a single object. Thanks to the early draftsmen in this field, who, if they did not write too well, at least refrained from writing too much, and to a Supreme Court that for decades has a shown a high degree of sound common sense and logical consistency in the interpretation of most of the homestead provisions, there exist today definite contours that remain distinguishable amid the camouflage of varying factual situations.

Harold B. Crosby and George John Miller, *Our Legal Chameleon, the Florida Homestead Exemption*, 2 U. Fla. L.Rev. 12, 13.

> The homestead personalty exemption is not to be confused with personalty in the form of cash that in reality takes the place of exempt real property, whether the substitution be occasioned by destruction [footnote omitted], or by sale of the realty of a deceased homesteader in appropriate circumstances [footnote omitted], or in the form of damages for trespass upon realty [footnote omitted]. In these instances the $1,000 limit does not apply, because the cash is realty in the eye of the law.

Crosby and Miller, *Id.*, at 81–2.

The United States of America, acting through the Farm Service Agency f/k/a the Farmers Home Administration, United States Department of Agriculture (FSA), has filed a Memorandum of Law in Support of the Trustee's Objection to Property Claimed as Exempt. The FSA is the holder of mortgages on the two parcels of the Debtor's real property in Pasco County, and therefore asserts a lien on the proceeds of the Debtor's settlement with DuPont as proceeds of its collateral. The FSA asserted at the hearing on the Trustee's Objection to the Debtor's Claim of Exemptions, however, that it is immaterial to the FSA whether the funds are exempt or not, so long as the Court determines that the FSA's lien attaches to the settlement proceeds. The Debtor has filed an objection to the secured claim of the FSA, coupled with a Motion to Determine Secured Status Pursuant to Section 506 of the Bankruptcy Code. Consequently, the extent and validity of the FSA's lien on the settlement funds will be determined in the separate contested matter.

Accordingly:

**IT IS ORDERED** that:

1. The Trustee's Objection to Debtor's Property Claimed as Exempt filed by Ter-

**448**

ry E. Smith, the Standing Chapter 12 Trustee, is sustained in part and overruled in part as set forth in this Order.

2. The Trustee's Objection is sustained as to the Collier County real property and the Holmes County real property, and the Debtor's claimed exemptions as to the Collier County property and the Holmes County property are disallowed.

3. The Trustee's Objection is sustained as to the 20 acre parcel of real property located in Pasco County, and the claim of exemption by Jerry Lee Gilley as to this parcel should be disallowed, without prejudice to Doris Gilley's claim of exemption as to the twenty-acre parcel in her separate chapter 12 case, Case No. 96–16912–8G2.

4. The Trustee's Objection is overruled as to the 30 acre parcel of real property located in Pasco County, and the claim of exemption by Jerry Lee Gilley as to his interest in this parcel is allowed.

5. The Trustee's Objection as to the value of the personal property claimed as exempt is overruled to the extent that the Trustee's Objection relates to the proceeds of the settlement of the Debtor's claim against E.I. DuPont Company, and the Debtor's claim of exemption as to such settlement proceeds is allowed.

6. To the extent that the Trustee's Objection relates to personal property other than the settlement proceeds, ruling on the Objection is reserved, and the Court will consider the matter further only upon a specific request either of the Debtor, the Chapter 12 Trustee, or in the event of conversion, the Chapter 7 or Chapter 11 Trustee.