**In re David C. ZIEGLER, Sr. and Rebecca F. Ziegler, Debtors.**

**Bankruptcy No. 99–81295.**

United States Bankruptcy Court, C.D. Illinois.

Sept. 30, 1999.

Ray Choudhry, Mid America Law Offices, Moline, IL, for debtors.

Richard E. Barber, Galesburg, IL, trustee.

## OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

Before the Court is the Objection filed by RICHARD E. BARBER, Trustee (TRUSTEE) to the claim of exemptions made by the Debtors, DAVID C. ZIEGLER, SR. and REBECCA F. ZIEGLER (DEBTORS).

In October 1997, the DEBTORS encountered financial difficulties and sought the

advice of a bankruptcy attorney. They were advised that they had too much equity in their residence to file a Chapter 7 Bankruptcy petition. Their circumstances worsened and fearing that their home might be lost to foreclosure, the DEBTORS sold it to Mr. Ziegler's sister, Donna J. Ziegler (PURCHASER), for $65,000. Though the PURCHASER did not have the down payment, Norwest Mortgage assured the parties that the sale could be structured to avoid that hurdle. At the time of the sale, the balance due on the first mortgage was $14,135.20 and the balance due on the second mortgage was $15,691.26. After reductions for settlement charges and accrued taxes, the closing statement shows cash due the DEBTORS of $32,151.53. The PURCHASER needed $66,983.80 to close the loan. She obtained a mortgage from Norwest Mortgage in the amount of $52,000. In order to come up with the remaining $14,983.80 needed for the closing, $15,000 of the proceeds of the sale was transferred from the DEBTORS to a third sister, Susan Ricail, who then gifted the funds to the PURCHASER. When all was said and done, the PURCHASER had acquired title to the residence valued at $65,000, by borrowing only $52,000. The DEBTORS received a check in the amount of $17,151.53, dated April 28, 1998, which they deposited in their checking account on June 8, 1998. Four days later, the DEBTORS purchased a Certificate of Deposit in the amount of $10,000.00. The DEBTORS continued to reside in the residence and made monthly payments in the amount due on the mortgage, most often directly to Norwest Mortgage.

On April 21, 1999, just shy of one year after the sale, the DEBTORS filed a Chapter 7 petition. The remaining balance of the certificate of deposit at that time was $4,152.38. The DEBTORS claimed the funds as exempt. The TRUSTEE objected to the claim of exemptions and a hearing was held on August 5, 1999. Evidence was presented and the Court took the matter under advisement. The parties have submitted written briefs.

Pursuant to § 12–906 of the Illinois Code of Civil Procedure, proceeds from the sale of homestead property are entitled to certain protection. That section provides:

> When a homestead is conveyed by the owner thereof, such conveyance shall not subject the premises to any lien or incumbrance to which it would not be subject in the possession of such owner; and the proceeds thereof, to the extent of the amount of $7,500, shall be exempt from judgment or other process, for one year after the receipt thereof, by the person entitled to the exemption, and if reinvested in a homestead the same shall be entitled to the same exemption as the original homestead.

735 ILCS 5/12–906.

The TRUSTEE contends that the DEBTORS have failed to accurately trace the sale proceeds. This Court disagrees. In the present case the proceeds are directly traceable. The DEBTORS deposited the sale proceeds into their bank account and withdrew $10,000 to purchase the certificate of deposit less than one week later. The monies claimed exempt by the DEBTORS represent the balance of the funds in that certificate of deposit.

The TRUSTEE also contends that it would be inequitable to permit the DEBTORS to claim an exemption in the remaining funds, having frittered away most of the proceeds. The TRUSTEE likens this case to *In re Lowder*, 188 B.R. 573 (Bkrtcy.C.D.Ill.1995), an earlier decision by this Court. In *Lowder*, the debtor claimed a homestead exemption in monies he received when he refinanced the mortgage on his residence. This Court allowed the trustee's objection to the debtor's claim of exemption, holding that the statute only applied to proceeds received upon the sale of a homestead, and not upon a refinancing. Commenting upon that result, this Court concluded:

A debtor can have but one homestead. At the time the Debtor filed this petition, he continued to reside in the premises and his statement of intention discloses that he intended to reaffirm the mortgages on his home. It is the facts at the time of the bankruptcy filing which determine whether a debtor is eligible to claim a homestead exemption. *In re Hughes*, 166 B.R. 957 (Bkrtcy. E.D.Okl.1994); *In re Dodge*, 138 B.R. 602 (Bkrtcy.E.D.Cal.1992). There is no evidence in the record that the Debtor intended to reinvest the proceeds in a different home or that he intended to abandon his current home. In view of those facts, permitting the Debtor to claim a homestead exemption in the proceeds from the refinancing would not in any way further the purposes of the homestead exemption law. Moreover, as the Trustee notes the Debtor has already spent almost $14,000.00 at his whim, and even if he had been entitled to an exemption, it has been used up and the monies remaining in his attorney's trust account would represent a nonexempt surplus.

Those last comments concerning use of proceeds, made by this Court after reaching its actual ruling, were superfluous commentary and are not binding here. The issue has been squarely presented in this case, and upon further consideration, this Court departs from its earlier dictum.

■ Intent plays a critical role in the entitlement to a homestead· exemption, both in its creation and in its abandonment. In order to claim a homestead exemption, the debtor must occupy the premises with the intent to claim it as a homestead. The right to homestead will not be lost when a debtor moves away, unless the debtor never intends to return. Recently, in *In re Wagenbach*, 232 B.R. 112 (Bkrtcy.C.D.Ill.1999), this Court held

that the debtors did not forfeit their right to claim a homestead exemption in proceeds from the sale of their former residence, even though they had moved from the home prior to the closing because of a change in employment. The debtors testified that they intended to reinvest the proceeds in a home in their new location.

■ Although § 12–906 does not specifically require that the debtor intend to use the proceeds to acquire another homestead, this Court finds such a requirement to be implicit in the statute. The cases construing § 12–906 are scant, but courts in other jurisdictions have imposed such a condition.[1] In *In re Gilley*, 236 B.R. 441 (Bkrtcy.M.D.Fla.1999), the court discussed Florida law, stating:

> The Florida Supreme Court has also considered whether the proceeds of the voluntary sale of homestead real property are exempt. See *Orange Brevard Plumbing & Heating Company v. La Croix*, 137 So.2d 201 (Fla.1962). Under the circumstances described in that case, the proceeds of the voluntary disposition of homestead property may continue to receive the protection of the exemption if the proceeds are segregated and if the debtor intends to reinvest the proceeds in a new homestead within a reasonable period of time.
>
> After a full consideration of the applicable authorities representing both views on the issue before us, and in recognition of the liberal interpretation of the homestead exemption to which this court is committed, we hold the proceeds of a voluntary sale of a homestead to be exempt from the claims of creditors just as the homestead itself is exempt if, and only if, the vendor shows, by a preponderance of the evidence an abiding good faith intention prior to and at the time of the sale of the homestead

1. In some states, such as Florida, there are no statutory provisions protecting sale proceeds. Other statutes fix a specified period of time during which the debtor holds the proceeds as exempt, requiring that the debtor intend to

acquire another homestead and maintain the proceeds separate and apart from other funds. Under other statutes, the proceeds are held to be exempt without regard to the vendor's intention.

to reinvest the proceeds thereof in another homestead within a reasonable time. Moreover, only so much of the proceeds of the sale as are intended to be reinvested in another homestead may be exempt under this holding. Any surplus over and above that amount should be treated as general assets of the debtor. We further hold that in order to satisfy the requirements of the exemption the funds must not be commingled with other monies of the vendor but must be kept separate and apart and held for the sole purpose of acquiring another home. The proceeds of the sale are not exempt if they are not reinvested in another homestead in a reasonable time or if they are held for the general purposes of the vendor.

The principle established by this decision is akin to the doctrine of equitable conversion, which obtains in this state. (Citation). The funds resulting from the voluntary sale of the homestead are "converted", and while "in transit" assume the character of the exempt real property, dependent, however, upon a bona fide intent of the seller to reinvest such funds in another homestead within a reasonable time. The requirement as to the intention of the seller to reinvest is necessary in order to carry into the effect the real, underlying purpose of the homestead exemption as hereinbefore outlined. (Citation omitted.)

■ The aim of § 12–906 is to protect the proceeds from the sale of a homestead until they can be reinvested in another. *People v. Stitt,* 7 Ill.App. 294 (1880). It is to aid homeowners in maintaining their status as homeowners. With that purpose in mind, § 12–906 cannot be viewed as a separate exemption, but rather is a continuation or extension of the general homestead exemption granted by § 12–901. 735 ILCS 5/12–901. As such, it would be inappropriate to disregard the debtor's intention concerning the disposition of the proceeds, given the prominent role played by intent under the general provision. Section 12–906 should not be interpreted to create an absolute dispensation for former homeowners, increasing the allotted personal property exemption three-fold during the one-year period following the sale.[2] Accordingly, this Court holds that under § 12–906, proceeds received upon the sale are entitled to protection only if there is a good faith intent to reinvest the proceeds in another homestead.

■ From the evidence presented at the hearing, it is clear that the DEBTORS never intended to reinvest the proceeds of sale in another homestead. Rather, with the assistance of Norwest Mortgage, a sale was contrived to a close relative, and a portion of the DEBTORS' equity in the amount of $15,000 was transferred to the PURCHASER. The bankruptcy was filed one week before the expiration of the statutory period. The DEBTORS have remained in the house and continue to make the mortgage payments directly to Norwest Mortgage. This Court concludes that the TRUSTEE's objection to the DEBTORS' claim of homestead exemption must be allowed, for the reason that the DEBTORS never intended to reinvest the proceeds from the sale in another homestead.

Interpreting the statute to require that the debtor intend to reinvest the proceeds in another residence eliminates the troublesome issue touched upon by this Court in *Lowder, supra.* In that case, permitting the debtor to exempt the remaining proceeds after expending more than the exemptible amount struck this Court as unfair, leading it to surmise that the monies first spent would be allocated to the allowable exemption. Applying that rule to other situations could lead to inequitable results. In the case of debtors selling their home to purchase a less expensive home, laying out any funds prior to the purchase would result in a loss of the

---

**2.** Under 735 ILCS 5/12–1001(b), known as the "wild card" exemption, a debtor may exempt personal property up to a value of $2,000.

exemption. The interpretation given § 12–906 in this case is also in keeping with the chief purpose of the homestead laws which has been and is to shelter the family. Permitting debtors to claim the homestead exemption when there is no intention to use those funds in acquiring a homestead accomplishes nothing toward that purpose and works an injustice upon their creditors.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ORDER

For the reasons stated in an OPINION filed this day, IT IS HEREBY ORDERED that the Objection filed by the TRUSTEE to the DEBTORS' claim of exemption is hereby sustained. The DEBTORS are hereby directed to turn over the Certificate of Deposit to the TRUSTEE within fourteen (14) days of the date of this Order.