**In re Michael L. DEZONIA, Debtor.**

**No. 6:05–BK–16146–ABB.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

July 27, 2006.

## ORDER OVERRULING OBJECTION TO HOMESTEAD EXEMPTION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came on for hearing upon the Objection to Property Claimed as Exempt [1] ("Objection") filed by Carla P. Musselman, Trustee (the "Trustee"). The Trustee objects, pursuant to 11 U.S.C. § 522(*l*) to the homestead exemption claimed by Michael L. Dezonia (the "Debtor"). Evidentiary hearings on the Objection were held on February 27, 2006 and July 19, 2006 at which the Debtor, counsel for the Debtor and counsel for the Trustee, and the Trustee appeared. The Court invited the parties to file any other documents for the Court's consideration.[2] The Trustee and the Debtor filed supporting legal memoranda.[3] The Debtor filed an Affidavit dated March 10, 2006.[4] The Debtor was directed to provide the Trustee tax returns for 2001–2005. The Trustee filed a Supplemental Memorandum of Law in Support of Objection to Exemptions following receipt of the tax returns. The issue is whether the Debtor may claim surplus proceeds of a foreclosure sale exempt pursuant to Fla. Const. art. X, Section 4(a)(1). After reviewing the pleadings and evidence, hearing argument, and being otherwise fully advised in the premises, the Court finds that the surplus proceeds of the foreclosure sale are exempt homestead property.

### FINDINGS OF FACT

The Debtor was a real estate investor who owned his own home since 1972 except for a brief period in 1998 as a result of a divorce. After the divorce the Debtor

Richard R. Baker, Baker Law Offices PA, Winter Park, FL, for Debtor.

1. Doc. No. 14

2. Doc. No. 19

3. Doc. No. 20; Doc. No. 21

4. Doc. No. 22

used the proceeds from the sale to purchase another home.[5] The Debtor purchased property located at 711 Lake Avenue, Maitland, Florida (the "Property") in January 2000 by quit claim deed from his S-corporation, MLD Properties, Inc. ("MLD"), a real estate investment company. The Property became the Debtor's homestead.

The Debtor defaulted in the payments due the first mortgage holder (the "Bank") and foreclosure was commenced on January 26, 2004.[6] The Debtor did not file an answer to the foreclosure complaint and a Final Judgment of Foreclosure was entered on March 10, 2004.

A foreclosure sale was scheduled for April 10, 2004. The Debtor entered into a repayment plan with the Bank prior to the sale and the sale was canceled. The Debtor defaulted. For over a year and a half the Debtor entered into numerous repayment plans with the Bank reinstating the mortgage several times. The Debtor paid the Bank over $20,000 during this period of time and the foreclosure sale was reset several times.

A foreclosure sale was conducted on September 23, 2005. South Investment Properties, Inc. ("SIP") submitted the highest bid of $241,000.00. The Debtor was unaware of any surplus proceeds and did not file any pleadings in the foreclosure action until after the foreclosure sale. A Certificate of Title was issued to SIP. SIP deeded the Property to William A. Griffin ("Griffin") on October 7, 2005. The Certificate of Disbursement listed the Bank as receiving $201,739.01 and $39,260.00 was deposited into the Registry of the Court. The Debtor remained in the Property throughout the foreclosure proceedings, issuance of title, and subsequent transfer to Griffin.

The Debtor filed a petition for relief pursuant to Chapter 7 of the Bankruptcy Code on October 14, 2005. Separate counsel filed a Notice of Appearance in the state court foreclosure action the same day. State court counsel filed an Objection to Bank One's Motion for Payment of Additional Advances (the "Objection"). A stipulation was entered into between the parties and the Chapter 7 Trustee, disbursing proceeds to the first and second mortgage holders and holding $17,489.50 (the "Surplus Proceeds") in a trust account pending this Court's determination of the homestead exemption.[7] Amendments to Schedule A and Schedule C were filed by the Debtor reflecting his claim of homestead exemption in the Surplus Proceeds pursuant to Fla. Const. art. X, Section 4(a)(1) and Fla.Stat. §§ 222.01, 222.02 and 222.05.[8] The Trustee contends the foreclosure extinguished any homestead exemption claim and the Surplus Proceeds are an account receivable and not exempt.

The Trustee requested federal income tax returns from the Debtor and MLD for the years 2002, 2003 and 2004. The Debtor led the Trustee and the Court to believe that the tax returns had been filed, the IRS misplaced them, and the hurricanes prevented the Debtor from obtaining copies to provide the Trustee. The Debtor indicated to the Trustee at the 341 Meeting of Creditors that he had the 2004 tax returns but the rest of the returns had been filed, and copies had been requested from the IRS, receipt of which was immi-

---

5. *Id.*

6. *Bank One v. Michael Dezonia*, Case No. 48–04–CA–703 filed in Orange County Circuit Court.

7. The Surplus Funds are being held in the Trust Account of Arnold, Matheny & Egan, P.A.

8. Doc. No. 13

nent. A conference call between the parties was initiated in chambers in which Debtor's counsel indicated the hurricanes kept the Debtor from providing the tax returns.

The Debtor did not file personal and MLD returns for the years 2001–2005 until May 2006, following the hearings and briefs on this issue. At no point during these delayed proceedings was the Debtor forthright in admitting the returns had not been filed. At the hearing on July 19, 2006, the Debtor conceded he was emotionally distraught during that period of time and may have thought the returns were filed when they were not. The Debtor's lack of candor delayed these proceedings and caused the Trustee to expend unnecessary attorneys' fees to obtain these records.

The Debtor has expressed his intent to reinvest the surplus proceeds into another homestead. The proceeds have been maintained in a separate trust account and not commingled with any other funds.

## CONCLUSIONS OF LAW

It is well established that Florida's homestead exemption should be liberally construed in favor of the exemption. *Snyder v. Davis*, 699 So.2d 999 (Fla.1997); *In re Ehnle*, 124 B.R. 361 (Bankr.M.D.Fla. 1991); *In re Gilley*, 236 B.R. 441, 445 (Bankr.M.D.Fla.1999); *In re Ehnle*, 124 B.R. 361 (Bankr.M.D.Fla.1991). The purpose of the homestead exemption is to protect and preserve the family home. *In re Harrison*, 236 B.R. 784, 786 (Bankr. M.D.Fla.1999) *citing In re Binko*, 258 B.R. 515, 516 (Bankr.S.D.Fla.2001). A challenge of the homestead exemption requires a strong showing that the Debtor is not entitled to the exemption. *Harrison*, 236 B.R. at 786 *citing In re Imprasert*, 86 B.R. 721, 722 (Bankr.M.D.Fla.1988); *Matter of Hersch*, 23 B.R. 42, 45 (Bankr.M.D.Fla.

1982). A long line of cases have held that Florida's homestead exemption extends to any proceeds of a *voluntary* sale of homestead real property, if the proceeds are segregated and the debtor intends to reinvest the proceeds in a new homestead within a reasonable time. *In re Englander*, 95 F.3d 1028 (11th Cir.1996); *Orange Brevard Plumbing & Heating Company v. LaCroix*, 137 So.2d 201 (Fla.1962); *Sun First National Bank of Orlando v. Gieger*, 402 So.2d 428 (Fla. 5th DCA 1981). Justice Hobson, in the case of *LaCroix* explains:

> [I]t often becomes necessary for a family to give up its former homestead and move to a new home out of economic necessity or for other compelling reasons. To hold other than we have in the instant case would be to deny to a family finding itself in such circumstances the full benefit of the homestead exemption provision of our Constitution and would be inimical to our declared policy of liberal construction thereof.

*LaCroix*, 137 So.2d at 206.

The Supreme Court has concluded proceeds of an *involuntary* conversion of homestead real property seized and sold are exempt. *Hill v. First National Bank of Marianna et al.*, 79 Fla. 391, 84 So. 190 (1920). Florida law is clear that that "surplus money arising from a sale of land under a decree of foreclosure stands in the place of the land itself in respect to liens thereon or vested rights therein." *Rosen v. Dorn–Kothe, Inc.*, 126 Fla. 717, 171 So. 646, 648 (Fla.1936). So long as the property is homestead at the time of sale, the surplus proceeds remain homestead and therefore exempt. A Debtor owning an equity right of redemption in his homestead at the time of a foreclosure sale is entitled to receive any surplus funds after payment of all liens. *Jelic v. Sears Mortgage Corp.*, 614 So.2d 1149, 1150 (Fla. 4th

D.C.A.1993), *quoting Rosen*, 126 Fla. 717, 171 So. 646.

■ The factors a court considers in determining whether the proceeds from the sale of homestead property are entitled to exemption are: (1) a good faith intention, prior to and at the time of the sale, to reinvest the proceeds in another homestead within a reasonable time; (2) the funds must not be commingled with other monies; and (3) the proceeds must be kept separate and apart and held for the sole purpose of acquiring another home. *LaCroix*, 137 So.2d at 206. The party objecting to a Florida exemption must establish by a preponderance of the evidence that the debtor's claim to the exemption is improper. *In re Simms*, 243 B.R. 156 (Bankr.S.D.Fla.2000). Once the objecting party has made a prima facie showing the burden of proof shifts to the Debtor. *In re Miller*, 188 B.R. 302, 307 (Bankr.M.D.Fla.1995).

■ The Trustee asserts the Debtor lacked the requisite intention to reinvest the proceeds into another homestead until after the bankruptcy case was filed. The Trustee relies on the Debtor's failure to: (i) be of aware of the possibility of any potential surplus as a result of a foreclosure sale; (ii) file any pleadings in the foreclosure proceedings until after the foreclosure sale; and (iii) in spite of the Debtor's alleged knowledge of the Surplus Proceeds (either in September 2005, or in October 2005 when his attorney filed the Objection), he failed to list any claim to Surplus Proceeds until Amended Schedules A and C were filed December 14, 2005. The Trustee contends the *La Croix* requirement of a good faith intention *prior to and at the time of the sale* to reinvest the proceeds from the sale of the homestead into the new homestead within a reasonable period of time are not met because of either the Debtor's lack of knowledge of surplus funds, or if Debtor had knowledge, his failure to disclose the surplus funds. The Trustee contends the failure to disclose the Surplus Proceeds is tantamount to a lack of intent to reinvest the proceeds until the Surplus Proceeds *were* disclosed.

■ The Trustee must establish by a preponderance of the evidence the Debtor lacked the requisite good faith intention to reinvest the proceeds in another homestead. There is no dispute that the funds were not commingled and were kept in a separate attorney trust account. In a foreclosure case it is generally unlikely a party would know before the final sale whether there would be any surplus proceeds. There is no requirement a debtor know before the sale there would be surplus funds in order to intend to reinvest them in another homestead, if there are any. Failure to file pleadings in the foreclosure case has no bearing on a debtor's intention to reinvest surplus proceeds that may arise following a foreclosure sale. The Debtor's failure to file amendments to his schedules reflecting the existence of surplus proceeds for approximately three months is no indication of his intent to reinvest those proceeds in another homestead. It is an administrative matter.

The Debtor maintains he always had the intent to reinvest surplus proceeds into another homestead, if there were any. His testimony is unrefuted. His experience as a real estate investor and history as a home owner is consistent with his testimony. The funds have not been commingled and have been maintained in a separate trust account. The Debtor remained in the Property throughout the foreclosure proceedings, issuance of title and subsequent transfer to Griffin. The Trustee failed to establish by a preponderance of the evidence based on the Debtor's lack of awareness of the Surplus Proceeds,

the failure to file a response to the foreclosure complaint, or file amendments in this case until months after his awareness of the Surplus Proceeds, that the Debtor did not intend to reinvest the Surplus Proceeds, if any, prior to and at the time of sale.

The Trustee contends that the Debtor's failure to timely provide federal tax returns for himself and his corporation as requested and his lack of candor regarding his failure to file tax returns demonstrate his lack of intent to reinvest the proceeds in another homestead and his overall credibility. This shifts the burden of proof to the Debtor. *Miller,* 188 B.R. at 307. The Debtor has sustained his burden of proof by a preponderance of the evidence, rebutting any evidence or inferences made by the Trustee for his failure to timely provide tax returns, that he had a good faith intention, prior to and at the time of sale to reinvest the Surplus Proceeds in another homestead within a reasonable time.

The Bankruptcy Code provides the Trustee alternative remedies for the Debtor's failure to timely provide the requested federal income tax refunds, cooperate with the Trustee or providing false testimony. Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the Trustee's Objection to Debtor's Claim of Exemptions is **OVERRULED;** it is further

**ORDERED, ADJUDGED and DECREED** the Surplus Proceeds of the foreclosure sale are exempt homestead property pursuant to Fla. Const. art. X, Section 4(a)(1); and it is further

**ORDERED, ADJUDGED and DECREED** the Surplus Proceeds of $17,489.50 held in the Trust Account of Arnold, Matheny & Egan, P.A. are to be released to the Debtor.

DONE AND ORDERED.