**In re Terri L. STEFFEN, Debtor.**

**No. 8:01–bk–09988–ALP.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 25, 2008.

Edward J. Peterson, III, Harley E. Riedel, Stichter, Riedel, Blain & Prosser, PA, Herbert R. Donica, Donica Law Firm PA, Tampa, FL, for Debtor.

*ORDER ON AMENDED MOTION BY
UNITED STATES FOR SUMMARY
JUDGMENT ON OBJECTION TO
HOMESTEAD EXEMPTION and
DEBTOR'S CROSS–MOTION FOR
SUMMARY JUDGMENT*

(Doc. Nos. 513 and 97)

ALEXANDER L. PASKAY,
Bankruptcy Judge.

THE MATTERS under consideration arise in an unusual and unorthodox scenario and involve a challenge by the United States of America (the Government) of Terri Steffen's (the Debtor's) rights to claim as exempt a certain real property located at 16229 Villarreal de Avila, Tampa, Florida (Villarreal Property). The matters before this Court are an Amended Motion for Summary Judgment filed by the Government and the Cross–Motion for Summary Judgment filed by the Debtor. Both sides contend that there are no genuine issues of material facts, and based on the same, they contend that they are entitled to a judgment in their favor, respectively.

According to the Government, its Motion for Summary Judgment should be granted on three different grounds. The first point raised by the Government, in anticipation of the Debtor's contentions, is that its objection was timely filed. The Government contends that the Section 341 Meeting of Creditors held on March 20, 2002, was never concluded and, therefore, the objection filed on June 14, 2002, was timely. Second, the Government claims that Florida's constitutional homestead exemption is reserved to "natural persons," and since the record title on the date of commencement was held by Overseas Holding Limited Partnership (OHLP), the claim cannot be recognized and must fail. Third, the Government contends that even assuming the property was exempt, the transfer of the property in 1997 to OHLP effectively extinguished the homestead exemption, and ultimately, according to the Government, the Debtor has abandoned any claim to the homestead.

Although the Government did not respond to the alternative ground asserted by the Debtor in support of the claim of exemption pursuant to Fla. Stat. § 222.05, in its oral argument on the Motion the Government took the position that the statute is not applicable to the issues involved here.

The Debtor, in support of her Cross–Motion and in opposition to the Government's Objection, first contends that the Objection is time barred because it was not filed within the 30 day period required by Fed. R. Bankr.P. 4003(b). Second, the Debtor contends that bare legal title is not required, and she can claim the homestead exemption as a result of her equitable and beneficial ownership in the property. The Debtor further argues that homestead is not limited to the constitutional provisions of the state, as Fla. Stat. § 222.05 is an additional source of exemption. In addition, the Debtor claims that third, the exemption was not extinguished by the conveyance to OHLP, and fourth, the Debtor has not abandoned the homestead.

## FACTS

Before considering the respective positions of the parties, due to the convoluted and complicated events preceding the commencement of the Chapter 11 case concerning the Villarreal Property, a summary of the relevant facts should be in order. The Villarreal Property was owned from May 1991 to June 1994 by the Debtor. In June 1994, the property was transferred by the Debtor to herself and Paul A. Bilzerian, who held the property as Tenants by the Entirety until March 1997. When Bilzerian became involved in

a criminal investigation and was ultimately indicted by the U.S. Government for violation of securities law, the Villarreal Property was conveyed to OHLP, the record title holder of both properties on the date of filing.

OHLP is a limited partnership, and the Paul A. Bilzerian and Terri L. Steffen 1995 Revocable Trust (1995 Trust) is the 99% limited partner. Overseas Holding Corporation (OHC) is its 1% general partner. The 1995 Trust is the 100% owner of stock in OHC. According to the Debtor's description of her interest on Schedule A, she retained a "beneficial interest" as the sole beneficiary of a 1995 Trust, which she and her husband conveyed to OHLP, in which OHC was the general partner, in which she was the sole stockholder.

After the commencement of civil litigation by the SEC, it sought a disgorgement from Bilzerian of the illegal profits obtained through his activities in the market. The SEC obtained a judgment on January 16, 2001, in the amount of $33,140,787.07 plus $29,196,812.46 in interest. However, in addition, the court also found that the Debtor owned OHLP as a 50% interest in the Villarreal Property and pressed a judicial lien in favor of the receivership appointed by the court. The court ordered the property sold with the proviso that 50% of the proceeds shall be delivered to the receiver and 50% to the Debtor or OHLP. That was the status of the Villarreal Property on May 29, 2001, the date of the commencement of the Chapter 11 case, later converted a Chapter 7 case on December 19, 2007.

Pursuant to the final judgment in the SEC litigation, the property was sold initially to the Guerrini Family Limited Partnership (Guerrini). As a result of the sale in compliance with the final judgment, the sum of $800,000.00 was deposited in the OHLP account. Thereafter, the property was sold again to DAER Holdings, LLC (DAER), which it appears still is the proper owner of the property located at Villarreal in Avila. Notwithstanding that the title was transferred twice, ostensibly to bona fide purchasers for value, the Debtor never vacated the premises and still occupies the residence. She contends that even though she purchased her new home at 16634 Sedona de Avila (Sedona property) using $600,000.00 from the proceeds of the original sale, she still uses the master bedroom at Villarreal, and the property is still occupied by members of his or her family. This amazing and puzzling picture is not documented nor in any way has the truth of the occupancy of Villarreal by the Debtor been exposed.

## ANALYSIS

Although the issue of timeliness of the filing of the objection was raised properly in the Debtor's Cross–Motion, it wasn't really urged as a basis for rejection of the objection and granting of the Summary Judgment. Notwithstanding, it is evident that the threshold inquiry must be directed to the timeliness issue, for the simple reason that if the contention is valid, it would be unnecessary to consider the other contentions urged by the parties.

■ The time to file an objection to exemption is governed by Fed. R. Bankr.P. 4003(b), which requires that all objections to the claimed exemptions be made within the 30 days after the "conclusion" of the Meeting of Creditors, properly scheduled and held pursuant to Section 341(a). The rule also provides, however, that the time is extended 30 days after any amendments to the list and supplemental schedules are filed, whichever is later. The issue of whether the Section 341 Meeting of Creditors is concluded or merely continued, leaving the 30 days for objec-

tion to the claimed exemption, has been litigated before.

As a general proposition, courts have held that a meeting of creditors that is continued without specifying a date for a continued meeting deems the original Section 341 meeting to be concluded, but courts have adopted other positions as well. In the case of *Smith v. Kennedy (In re Smith)*, 235 F.3d 472 (9th Cir.2000), the court of appeals followed the majority position, holding that for an adjournment of a creditors' meeting to be effective, it must be accompanied by announcement of the adjourned date and time. When the trustee in *Smith* attempted to adjourn the meeting, but failed to announce the adjourned date and time, the original meeting was deemed to be concluded. Similarly, in the case of *In re Levitt*, 137 B.R. 881 (Bankr.D.Mass.1992), the bankruptcy court held that the meeting of creditors may be adjourned from time to time by an announcement at the meeting if the adjourned date and time is provided without any further notice. The original meeting is deemed to be concluded if no announcement is made.

Having reviewed the cases dealing with the subject compels the conclusion that the rule in *Smith* represents the majority rule, and therefore unless the 341 Meeting of Creditors is rescheduled for a date and time certain, the meeting is deemed to have been concluded, thus beginning the 30 day period for filing objections. There is authority for the proposition that 30 days is a jurisdictional requirement, and the court lacks jurisdiction to consider the case. *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595 (6th Cir.1997). In the case of *Matter of Stoulig*, 45 F.3d 957 (5th Cir. 1995), the court held that the bankruptcy court had no jurisdiction to grant the trustee an extension of time after expiration of 30 day period prescribed by the Bankruptcy Rules.

Notwithstanding the jurisdictional issue, several courts have held that a conclusion of the meeting of creditors is best determined on a case-by-case basis to assess whether the trustee acted reasonably. *In re Brown*, 221 B.R. 902 (Bankr.M.D.Fla. 1998); *see also In re Cherry*, 341 B.R. 581 (Bankr.S.D.Tex.2006). Under the case-by-case approach, the question as to whether the meeting was concluded can only be answered by analyzing the factors of each individual case. In the case of *Petit v. Fessenden*, 80 F.3d 29 (1st Cir.1996), the U.S. Trustee continued the meeting of creditors for a third time without specifying a date. Three months later, a newly appointed trustee filed an objection to the debtor's claim of exemption. The court held that in the absence of a defined conclusion date, the trustee may continue the meeting of creditors indefinitely, and the 30 day period to file objections under Fed. R. Bankr.P. 4003(b) will not begin to run until there is a defined conclusion date. In the case of *In re DiGregorio*, 187 B.R. 273 (Bankr.N.D.Ill.1995), the court adopted a third approach by imposing the burden on the debtor to ensure that the meeting of creditors is concluded. *See also, In re Flynn*, 200 B.R. 481 (Bankr.D.Mass.1996). According to the bankruptcy court, the debtor had the burden to move for a court order concluding the meeting of creditors if the trustee fails to conclude the meeting of creditors because the debtor has the greatest incentive to ensure the clock for the 30 day period begins to run. *Id.*

The record in this case is unclear concerning the continuation of Meeting of Creditors and resetting the same. At one point, it appears from the transcript that counsel for the Debtor *sub silentio* admitted, or at least did not object to the rescheduling, even though at that time there

was no agreement to a precise date and time for the rescheduled meeting (Doc. No. 85, Exhibit A, pg 85–86). The record is clear that counsel for the Debtor did not insist on a decision regarding the conclusion of the Meeting of Creditors.

In the present situation, in light of the ambiguity of the transcript and responses by Debtor's counsel concerning the continuance of the meeting of creditors, this Court is constrained not to adopt the majority view, and therefore, concludes under these circumstances that the objection was timely, and therefore the Debtor's objection should be overruled.

In order to ensure that the whole issue is properly considered, in case the previous conclusion is found to be incorrect, it is appropriate to consider the additional bases for objection asserted by the Government.

### ENTITLEMENT TO THE CLAIMED EXEMPTION

■ The question of exemption is, of course, governed by the laws of the state of Florida by virtue of the fact that Florida opted out of the federal exemptions. pursuant to Section 522(b)(2) of the Bankruptcy Code. Thus, the right to claim a homestead is governed by Art. 10 § 4 of the state constitution. This provision originally recognized that a natural person who was the head of household was entitled to homestead protection of his residence from claims of creditors. Due to an amendment in 1985, the term was enlarged by eliminating the requirement that the claimant be a head of a household, and the exemption is now available to all properties used by the claimant, provided the claimant is a natural person. As indicated earlier, on the date of the commencement of the case, the Villarreal Property was owned by OHLP, which is not a natural person. All things being equal, the exemption claim should be disallowed without any further discussion.

However, the matter is not that simple in the present instance. It is the Debtor's contention that OHLP is owned by OHC, of which she is the 100% stock holder by virtue of being the sole beneficiary of the 1995 Trust. The Debtor relies on this relationship to claim homestead exemption on property legally owned by OHLP but occupied by her as her residence. To accept the proposition, this Court must perform a quantum leap to transform stockholder interest into property that belongs to OHLP, coupled with the undeniable fact that notwithstanding, she occupied the property as her residence on the date of the commencement of the case. The most puzzling fact of this case is that she continues to occupy the Villarreal Property, even when it was sold to Guerrini and then to DAER. Notwithstanding that in the interim she claimed to have purchased the Sedona property that she now claims to be her homestead, the Debtor claims her exemption based on the premise that a sufficient ownership interest flows from OHLP to its general partner OHC and to its only stockholder, the 1995 Trust in which the Debtor claims to be the sole beneficiary. The claim of a stockholder of a homestead owned by a corporation in which the Debtor was a 100% stockholder was considered in the case of *In re Duque*, 33 B.R. 201 (Bankr.S.D.Fla.1983). The claim was rejected in *Duque* when the court held that the stockholder cannot claim homestead in an effort to insulate the property from forced sale. *Id.*

■ The Debtor also contends that her claim could be sustained based on her status as a sole beneficiary of a trust, but the 1995 Trust never owned the subject property. One reported case suggests that a spendthrift trust beneficiary may claim the exemption. *HCA Gulf Coast*

*Hospital v. Estate of Downing*, 594 So.2d 774 (Fla. 1st DCA 1991). A court found that a spendthrift trust beneficiary was entitled to claim the exemption based on finding that she would have been entitled to it if the property had passed directly to her through devise or intestacy. *Id.* In the present instance, OHLP is a limited partnership which owns bare legal title to property, but property would not pass to the Debtor through devise or intestacy if the trust had not been established. In *Downing*, the mother transferred assets to the trust for he benefit of her only child, the daughter. *Id.* The creditors were subject to the exemption claimed by the trustee on behalf of the daughter. *Id.* In the instant analysis, the Debtor's claim rests on the proposition that she resides in the property, and possession itself is sufficient to support the homestead claim. In support of this contention, the Debtor also relies on Fla. Stat. § 222.05, which provides:

> Any person owning and occupying any dwelling house, including a mobile home used as a residence, or modular home, on land not his or her own which he or she may lawfully possess, by lease or otherwise, and claiming such house, mobile home, or modular home as his or her homestead, shall be entitled to the exemption of such house, mobile home, or modular home from levy and sale as aforesaid.

Even a cursory reading of the statute leaves no doubt that is was designed to help an owner of a mobile home used as a residence or modular home on land that was not his or her own. Applying the statute in question, also referred to as the mobile home exception, to the subject property owned by OHLP on the date of filing but occupied by the Debtor, this is not a situation where a residence or the home sits on land that is not owned but merely leased. As noted earlier, this rec-ord is devoid of any believable evidence to establish the basis of the Debtor's right to occupy the residence, except her position that she owned the property, rather than the record owner. The reliance of the Debtor on Fla. Stat. § 222.05 and the cases of *In re Bubnak*, 176 B.R. 601 (Bankr.M.D.Fla.1994) and *In re Mead*, 255 B.R. 80, 84 (Bankr.S.D.Fla.2000) furnishes no support for this claim. *Mead* involved leased property on which a dwelling house was located, and the fact that *Bubnak* held that unorthodox residences may be included begs the question.

This Court is not unmindful of the well recognized principle that the homestead exemption laws shall be construed liberally in favor of the claimant and construed strictly against the party challenging the exemption. Thus, homestead exemption is presumed to be valid, and the party challenging bears the burden of proving by a preponderance of the evidence that a debtor is not entitled to the homestead exemption. *In re Klaiber*, 265 B.R. 290 (Bankr.M.D.Fla.2001). Courts have liberally construed the homestead exemption in favor of the claimant in order to achieve the beneficial purpose for which the exemption has been established by the Florida Constitution by Art. 10 § 4, which is to preserve the home as shelter for the family so as to prevent a family from becoming a public charge. *In re Dezonia*, 347 B.R. 920 (Bankr.M.D.Fla.2006); *In re Edwards*, 356 B.R. 807 (Bankr.M.D.Fla. 2006); *Frase v. Branch*, 362 So.2d 317, 318 (Fla.2d Dist.Ct.App.1978).

Courts have also extended the homestead protection by recognizing situations where the claimant possesses without title or has merely an equitable interest. In the case of *In re Dean*, 177 B.R. 727 (Bankr.S.D.Fla.1995), the court held that the owner of a cooperative apartment unit who intended to and did, in fact, occupy

the residence was entitled to claim the exemption. The owner was a record owner, even though the building was not owned by the debtor and was entitled to claim co-op as the homestead. *See also Southern Walls, Inc. v. Stilwell Corp.,* 810 So.2d 566 (Fla. 5th Dist.Ct.App.2002). The Florida Supreme Court held an equitable interest was sufficient to claim homestead where a husband paid the purchase price, but the property was titled in the wife's name. *Bessemer Properties v. Gamble,* 158 Fla. 38, 27 So.2d 832 (1946).

Further, homestead exemption for tax purposes is governed by totally different principles than for protection from forced sale. In case of *Manda v. Sinclair,* 278 F.2d 629 (5th Cir.1960), the title of homestead property was held by a corporation. In this case when the corporation was dissolved, the court recognized the exemption for tax purposes, but the court limited its holding to the tax issue.

█ It is equally true, however, that the homestead protection guaranteed by the Florida Constitution should not be used to shield fraud or reprehensible conduct. In the present instance, it is fair to infer that the conveyance of the property to OHLP was for the sole purpose of immunizing the property from the reach of creditors, particularly the SEC, which at that time was already suing Bilzerian, a co-owner of the property, and ultimately resulted in a disgorgement judgment in the amount of $33,140,787.07 plus $29,196,812.46 in interest against Bilzerian.

█ Contrary to the Debtor's contention that the conveyance of the Villarreal Property to OHLP was made for "estate planning purposes" and considering the totality of the picture and all the events described above, this Court is constrained to conclude that the Debtor cannot claim the Villarreal Property as homestead and, since the property was sold, neither can

the proceeds of sale, delivered to her in the amount of $800,000.00 be claimed as exempt. The fact that her current residence on Sedona was purchased with the funds is of no consequence because, if logic follows, property purchased with non-exempt property for the purpose of establishing the homestead protection has not been accepted to be a valid defense. *Merchants & Contractors Capital Corp., Inc. v. Crum (In re Crum),* 294 B.R. 402 (Bankr. M.D.Fla.2003) *aff'd* 125 Fed.Appx. 978 (11th Cir.2004); *see also In re Hecker,* 316 B.R. 375 (Bankr.S.D.Fla.2004) *aff'd* 264 Fed.Appx. 786 (11th Cir.2008); *Dzikowski v. Chauncey (In re Chauncey),* 308 B.R. 97 (Bankr.S.D.Fla.2004).

The government also urges that the transfer of the property to OHLP in 1997 was tantamount to abandonment. *In re McCarthy,* 13 B.R. 389 (Bankr.Fla.1981); *Gennet v. Docktor (In re Levy),* 185 B.R. 378 (Bankr.S.D.Fla.1995). Because the proceeds of sale were deposited in her business accounts, the Debtor lacked the intent to use the funds to establish a subsequent homestead property.

The Government's Objection is sustained, and the proceeds of the sale are property of her Chapter 7 estate subject to administration by the trustee.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Amended Motion by United States for Summary Judgment on Objection to Homestead Exemption (Doc. No. 513) be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that the Debtor's Cross–Motion for Summary Judgment (Doc. No. 97) be, and the same is hereby, denied.